[No. C021731. Third Dist. Dec. 27, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO LEON JOHNSON, Defendant and Appellant.

**COUNSEL**

Donna L. Hall, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—A jury convicted defendant of four counts of the lesser offense of attempted voluntary manslaughter (Pen. Code, §§ 664, 192, subd. (a)), as necessarily included in the charges of attempted murder, and four counts of assault with a semiautomatic firearm. (Pen. Code, § 245, subd. (b); statutory references to sections of an undesignated code are to the Penal Code.) With respect to each of the latter counts the jury found true allegations that defendant personally used a firearm "within the meaning of Penal Code section 12022.5(a) and (d)." The jury also found defendant guilty of discharging a firearm at an occupied motor vehicle (§ 246), and being a convicted felon in possession of a firearm (§ 12021, subd. (a)) and, with respect to one of the victims, found true allegations that defendant inflicted great bodily injury (§ 12022.7).

Sentenced to state prison, defendant appeals. He contends the trial court erred in failing, sua sponte, to instruct on attempted involuntary manslaughter and in imposing the four firearm use enhancements. We affirm.

Shane Dugger and his friends Spencer Bracey and Troy Lathers and Dugger's 10-year-old nephew, Lee Talbert, were in Bracey's automobile. Bracey was driving, Dugger was in the front passenger seat and Lathers and Talbert were in the rear seat. Bracey drove into the parking lot of an apartment complex and another car followed them. As Lathers got out of Bracey's vehicle and entered one of the apartments, the occupants of the following vehicle, defendant and two others, challenged the remaining occupants of the Bracey vehicle, giving them hard looks and confrontationally greeting them, "What's Up, Blood?"[1] Dugger replied he was going with his nephew and some friends to the video arcade. Defendant moved his car so that the bumpers of the two cars were about five feet apart. In an angry tone, defendant asked Dugger, "aren't you the guy that ran up in my motel?" Dugger had no recollection of such an incident. Bracey told defendant to take it up another time "because I got a little kid in the car." As Lathers returned and got into Bracey's car, defendant, still in his car, pulled out a large, semiautomatic handgun, aimed it out the window and fired five to seven shots, more than one of which hit ten-year old Talbert. Talbert sustained critical injuries to his intestines and liver and suffered the loss of a kidney.

Defendant claimed self-defense. He testified that Bracey used confrontational language and Lathers jumped into the car and leaned under the seat as

---

[1]Lathers and Bracey, although not gang members, were associated with the "Crips" gang. Dugger testified that the language and tone used by defendant was typical in a hostile encounter between a "Crip" and a "Blood."

if to obtain a weapon. Defendant asserted that he heard at least two shots from the other car before he fired and that he was "not aiming at anybody."

By its verdicts finding defendant guilty of the lesser included offense of attempted voluntary manslaughter, the jury impliedly found, under the instructions given, that defendant acted under an actual but unreasonable belief in the imminent need to defend himself from mortal danger.

## I

■　Defendant contends that the trial court erred in failing, sua sponte, to instruct on "attempted involuntary manslaughter." If there were such a crime, it would necessarily be based on the internally contradictory premise that one can intend to commit an unintentional killing. Since the essential premise posits a manifest impossibility, there is no such crime as attempted involuntary manslaughter. (*People* v. *Broussard* (1977) 76 Cal.App.3d 193, 197 [142 Cal.Rptr. 664].)

## II

In sentencing defendant, the court designated the term imposed for one of the assault with a semiautomatic firearm convictions (§ 245, subd. (b)) as the base term, and imposed consecutive terms for the three other felony assault convictions and the four enhancements for personal use of a firearm. The court stayed service of the terms imposed for the convictions of attempted voluntary manslaughter, discharging a firearm at an occupied motor vehicle and possession of a firearm by a convicted felon. (§ 654.)

■　Defendant contends the court erred in imposing firearm-use enhancements because firearm use is an element of the crime with respect to which the enhancements were alleged, i.e., assault with a semiautomatic firearm. Defendant argues that their imposition violates an express exception to the applicability of section 12022.5 where firearm use "is an element of the offense of which [defendant] was convicted." (§ 12022.5, subd. (a).)

Countering, the People invoke section 12022.5, subdivision (d) (hereafter subdivision (d)), which provides that "[t]he additional term provided by this section *may be imposed* in cases of assault with a firearm under paragraph (2) of subdivision (a) of Section 245, *or assault with a deadly weapon which is a firearm under Section 245.*" (Italics added.)

Because subdivision (d) expressly refers to section 245, subdivision (a)(2) but does not so refer to section 245, subdivision (b), as an "exception to the exception" stated in section 12022.5, subdivision (a), defendant argues

the doctrine *expressio unius est exclusio alterius* and the maxim that ambiguities in a criminal statute must be resolved in defendant's favor combine to prevent subdivision (d) from being applied to convictions under section 245, subdivision (b).

As used in subdivision (d), the phrase, "assault with a deadly weapon which is a firearm under section 245" is not ambiguous. It refers to every assault conviction under section 245 in which a firearm is used. Since a loaded semiautomatic firearm which is used in a violation of section 245, subdivision (b) is both a deadly weapon and a firearm (see *People* v. *Kelly* (1959) 168 Cal.App.2d 387, 389 [335 P.2d 955]), the exception of subdivision (d) applies. The language is clear and, under the "plain meaning" rule, we need look no further to resolve the issue. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380]; *Cisneros* v. *Vueve* (1995) 37 Cal.App.4th 906, 910 [44 Cal.Rptr.2d 682].)

However, legislative history supports our conclusion. In *People* v. *Martinez* (1987) 194 Cal.App.3d 15 [239 Cal.Rptr. 272], defendant was convicted of violation of former subdivision (c) of section 245, assault with a firearm upon a peace officer (now § 245, subd. (d)(1); Stats. 1989, ch. 1167, § 1, p. 4526). The *Martinez* court noted that as sections 245 and 12022.5 read prior to 1983, firearm-use enhancements could routinely be tacked on without exception. When the Legislature divided section 245 into four categories of felony assaults (Stats. 1982, ch. 142, §§ 1-1.7, pp. 468-474), section 12022.5 was amended to add subdivision (d) "to preserve the status quo ante by providing that the use enhancement charge 'applies to a deadly weapon which is a firearm.'" (*Martinez, supra,* 194 Cal.App.3d at p. 23 quoting Legis. Counsel's Dig., Assem. Bill No. 3314, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 510.) Since there is nothing to indicate that the Legislature intended to treat assault with a firearm committed on a peace officer differently for enhancement purposes than other felony assaults with a firearm under section 245, *Martinez* concluded that the assault defined by former subdivision (c) of section 245, comes within the exception of subdivision (d), despite the fact subdivision (d) did not expressly refer to subdivision (c). By parity of reasoning, assault with a semiautomatic firearm in violation of section 245, subdivision (b) comes within the exception of subdivision (d) for "assault with a deadly weapon which is a firearm under section 245."

The Legislature views assault with a semiautomatic firearm (§ 245, subd. (b)) as more serious than assault with a firearm (§ 245, subd. (a)(2)) as evidenced by the fact the former carries a more severe punishment ("three, six or nine years"; § 245, subd. (b)) than the latter ("two, three or four

years"; § 245, subd. (a)(2)). One convicted of the less serious crime is indisputably subject to an additional firearm use enhancement by virtue of the fact that subdivision (a)(2) of section 245 defining the less serious crime is expressly referred to in subdivision (d). The interpretation of the statute urged by defendant would create the anomaly that one convicted of the more serious crime of assault with a semiautomatic firearm would escape imposition of a firearm use enhancement. It is inconceivable that the Legislature intended such a freakish result and a literal interpretation of the statute gives assurance it did not.

The judgment is affirmed.

Davis, J., and Scotland, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 19, 1997.