[No. D026836. Fourth Dist., Div. One. Jan. 29, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNARD LEE HAMILTON, Defendant and Appellant.

## COUNSEL

Sharon L. Rhodes, under appointment of the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, J.**—Charged with four counts of attempted premeditated murder and other related offenses, Bernard Lee Hamilton was convicted of the lesser related offense of use of a tear gas weapon. In this opinion we conclude that to be guilty of the unlawful use of a tear gas weapon, it is unnecessary that the weapon be either loaded or operable.

### FACTS

#### A. *Prosecution Case*

On October 28, 1995, Kristina Machuta was at a party in Mira Mesa. Appellant, Machuta's former boyfriend, also attended the party. At approximately 11 p.m., Machuta and several friends left the party in a car driven by Shalief Strother. Machuta became upset when she saw appellant in a car behind them. The car in which appellant was riding drove up next to

Strother's window. Appellant, who was in the front passenger seat, and who was accompanied by two other men, told Strother to pull over. Machuta did not want to talk to appellant and asked Strother to take her back to the party. Strother did so.

After Strother left Machuta at the party, he and his remaining passengers drove away. Appellant and his companions followed. Strother sped up. Appellant's car drove in front of them and appellant reached out his window with what appeared to be a handgun. Appellant pulled the trigger three times but the gun did not fire. The chase continued. The vehicle in which appellant was riding pulled up next to Strother's car and another man in the vehicle fired. Additional shots were fired from appellant's car. Eventually, Strother was able to get away and report the incident to the police.

### B. Defense Case

Appellant testified that on October 28, 1995, he and two friends went to a Halloween party in Mira Mesa. Appellant was dressed as an "Untouchable." Apparently as part of his costume, appellant had an unloaded tear gas gun in his pocket. At the party he saw his ex-girlfriend Machuta but did not talk to her. Later, appellant and his friends were standing by their car when it was hit by an object thrown from Strother's car. Appellant and his friends followed Strother. They pulled up next to Strother's car and additional unpleasantries were exchanged. Appellant, in an attempt to frighten Strother, pointed the unloaded tear gas gun at him, "clicked" the trigger three times and stated: "That's how people get their car took."

Later, more words were exchanged between the occupants of the vehicles. As they drove, one of the men with appellant fired a gun at Strother's car. Appellant told his companion it was stupid to shoot from the car and asked to be let out. The driver pulled over and appellant got out. Appellant stated he fired no gun from the car.

A jail inmate testified he talked with the driver of the car in which appellant was riding. The driver stated appellant had "wimped out."

### DISCUSSION

### A. Instructions Concerning Tear Gas Weapon Use

Appellant argues the trial court erred when it failed to instruct the jury that to be guilty of the use of a tear gas weapon, it was necessary the weapon contain tear gas and be operable.

At the time of the offense in this case, Penal Code[1] section 12403.7, subdivision (a)(8), stated: "Any person who uses tear gas or tear gas weapons except in self-defense is guilty of a public offense." (Stats. 1993, ch. 954, § 1.)[2] Based on section 12402, defining the term "tear gas weapon," and section 12403.7, former subdivision (a)(8), the trial court instructed the jury: "Any person who uses a tear gas weapon is guilty of a crime. [¶] A tear gas weapon includes any revolver, pistol or other form of device, portable or fixed, intended for the projection or release of tear gas, except those regularly manufactured and sold for use with . . . firearm ammunition."

The trial court did not err in failing to instruct the jury that a tear gas weapon must be both operable and loaded before it can be used within the meaning of section 12403.7, former subdivision (a)(8), since such condition of the weapon is not an element of the offense.

"Many cases have interpreted the laws prohibiting possession and use of firearms to apply even if the gun in question is inoperable. [Citations.] [¶] These cases identify what has been called 'an important common thread of perceived fear in their discussion of the underlying purpose of The Dangerous Weapons' Control Law [§ 12000 et seq.].' [Citation.] As one case observed, '. . . the statute seeks to deter both physical harm and conduct which produces fear of harm. The fear may arise either from a gun that really shoots or from one which is designed to shoot and gives the appearance of shooting capability. Persons held at gunpoint have no stomach for inquiry. Danger radiates not only from the weapon, but from the defensive reactions of others. In response to the lawbreaker's weapon, operable or not, a victim or law officer may himself resort to a firearm. Further, a demand for affirmative proof of operability would allow the defendant to frustrate the statute by getting rid of the gun or concealing it. . . . [I]t is enough that the prosecution produce evidence of a gun designed to shoot and which gives the appearance of shooting capability.' [Citation.]" (*In re Arturo H.* (1996) 42 Cal.App.4th 1694, 1697-1698 [51 Cal.Rptr.2d 5] [dealing with the possession of an inoperable pellet gun possessed in violation of § 626.10, subd. (a)].)

---

[1]All further statutory references are to the Penal Code.

[2]While the crime of using a tear gas weapon has not changed since the offense in this case, the provisions of section 12403.7 have been renumbered twice since 1995. At the time of trial, the offense involved here was contained in section 12403.7, subdivision (a)(7). (Stats. 1995, ch. 437, § 6.) The offense now appears as section 12403.7, subdivision (g). (Stats. 1997, ch. 17, § 116.)

Section 12403.7, former subdivision (a)(8), is part of the Dangerous Weapons' Control Law. The device appellant pointed at Strother was a tear gas weapon, not a toy. The Legislature and the courts have strictly applied sections prohibiting the possession and use of dangerous weapons. Threatening another with any weapon, including a tear gas weapon, entails the dangers cited above. We conclude it is not an element of section 12403.7, former subdivision (a)(8), that the tear gas weapon be loaded or operable.

Appellant's citation to *People* v. *DeLaCruz* (1993) 20 Cal.App.4th 955 [25 Cal.Rptr.2d 202], is not on point. Appellant suggests the case supports his position that the harm addressed by the Legislature with regard to tear gas weapons was different than that with other dangerous weapons. He argues the Legislature was concerned only with the actual use of the noxious substance and not the fear engendered by a display of the weapon. The difficulty is that *DeLaCruz* did not deal with definitions of use but rather with whether prosecution for violation of section 375, subdivision (d)—the release or discharge of any gaseous or liquid substance injurious or irritating to persons—was proper when the conduct was covered under the more specific terms of section 12403.7, former subdivision (a)(8).[3] The case is simply not on point.[4]

## B. *Vagueness*

Appellant argues that if this court determines the use of a tear gas weapon within the meaning of section 12403.7, former subdivision (a)(8), includes pulling the trigger on such a weapon when it is either inoperable or unloaded, then the section is unconstitutionally vague. Appellant argues this is so since persons of common intelligence would not be informed by the section that criminal liability could arise from that act.

"A criminal statute which fails to define a crime with sufficient certainty violates the constitutional guarantee of due process of law. [Citation.] This 'void for vagueness' doctrine requires that 'the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily

---

[3]See footnote 2, *ante.*

[4]Our resolution of this issue also answers appellant's contention that since there was no evidence his tear gas weapon was loaded or operable, the evidence was insufficient to support his conviction of using the weapon.

guess at its meaning and differ as to its application, violates the first essential element of due process of law.' [Citation.]" (*People* v. *Deskin* (1992) 10 Cal.App.4th 1397, 1400 [13 Cal.Rptr.2d 391].)

While the core of the vagueness concept is that basic fairness requires fair notice, the practicalities of defining crimes make the concept more complex and require the indulging of certain necessary fictions. (See *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585].) "In considering whether a legislative proscription is sufficiently clear to satisfy the requirements of fair notice, we consider not only the language of the challenged statute, but also its legislative history. [Citation.] 'We thus require citizens to apprise themselves not only of statutory language but also of legislative history . . . and underlying legislative purposes [citation].' " (*People* v. *Morse* (1993) 21 Cal.App.4th 259, 270 [25 Cal.Rptr.2d 816].) We also require citizens apprise themselves not only of subsequent judicial decisions interpreting a statute but of decisions construing other statutes using substantially similar language. (*People* v. *Deskin, supra*, 10 Cal.App.4th at p. 1400.)

 Section 12403.7, former subdivision (a)(8), is not unconstitutionally vague. The section makes it a crime to use a tear gas weapon other than in self-defense. The word "use" in the context of weapon statutes uniformly and unambiguously means the intentional display of the weapon in a menacing manner or the intentional firing or discharge of, or the intentional striking of a human being with the weapon. (See *People* v. *Wims* (1995) 10 Cal.4th 293, 302 [41 Cal.Rptr.2d 241, 895 P.2d 77]; *People* v. *Johnson* (1995) 38 Cal.App.4th 1315, 1317, 1319 [45 Cal.Rptr.2d 602]; CALJIC No. 17.16.) As noted above, the law has consistently held that weapon possession and use offenses do not require the weapon be loaded or operable.

Appellant is charged with this understanding of the law and cannot complain that section 12403.7, former subdivision (a)(8), is somehow unclear.

We note the trial court's instruction on the use of a tear gas weapon merely stated that any person who used such a weapon was guilty of a crime. The instruction did not define "use" nor did it state that such use in self-defense was lawful. These omissions in this case were meaningless. The term "use" was defined in the instruction concerning the firearm use allegations. Appellant made no claim he acted in self-defense but stated he pointed

the weapon to menace Strother. Finally, appellant's testimony at trial was essentially a confession to every element of the crime of using a tear gas weapon.

## C. *Instruction on Lesser Included Offense*

■ Appellant argues when the trial court decided to instruct on the offense of tear gas weapon use as a lesser related offense of the crimes charged, it was required also to instruct on the lesser included offense of possession of a tear gas weapon.

In *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], the court explained a trial court must instruct the jury sua sponte on lesser included offenses "when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged."

As noted, the very reason instructions were given on the lesser related offense of tear gas weapon use was appellant's confession at trial that he had pointed such a weapon at Strother with the intent to frighten him. There was simply no evidence appellant was merely in possession of a tear gas weapon.

## D. *Excision of Statement in Probation Report*

Appellant argues the trial court erred when, after defense counsel requested it do so, the trial court did not strike from the probation report a statement that appellant's music group was affiliated with the Blood gang.

In the gang affiliation section of the personal history portion of the probation report, the probation officer stated: "The defendant denied any gang activity. He had told the police that his group, 'Roof Top Rascals,' is affiliated with the Piru sets."

At the sentencing hearing, appellant asked the statement be stricken from the probation report since it was contrary to the evidence presented at trial. The trial court stated it heard the evidence at trial that appellant's musical group was not affiliated with a gang. The court stated unless the People offered a police report supporting the probation officer's statement, it would strike it. The court stated in any case the statement was not of much importance to it but might be meaningful to the Department of Corrections.

The People offered no report substantiating the subject statement. No reference was made in the sentencing hearing to any claim that appellant had gang affiliations. Our reading of the record is that the trial court struck the statement concerning gang affiliation subject to any substantiation the People could offer. None was presented; the statement is stricken.

The judgment is affirmed.

Kremer, P. J., and Nares, J., concurred.

A petition for a rehearing was denied February 24, 1998, and appellant's petition for review by the Supreme Court was deneid April 15, 1998.