91 Cal.Rptr.2d 730 (2000)
22 Cal.4th 190
990 P.2d 603
In re TAMEKA C, a Person Coming Under the Juvenile Court Law
The People, Plaintiff and Respondent,
v.
Tameka C, Defendant and Appellant.
No. S068192.
Supreme Court of California.
January 13, 2000.
*731 Terry K. Diggs, under appointment by the Supreme Court, San Francisco, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias, David D. Salmon, Richard Rochman and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.
GEORGE, C.J.
When a defendant commits an assault with a firearm upon an intended victim, and with the same shot injures an unintended victim, thereby committing another assault, may the sentence for each assault be enhanced by a separate firearm-use *732 enhancement? We conclude the sentence may be so enhanced.

I
On the evening of March 1, 1994, an altercation broke out between defendant Tameka C. and Eddie Stansberry. Stansberry struck defendant in the face. Defendant left the scene and returned shortly thereafter with a firearm. She shot Stansberry in the buttocks. Three police officers who had been at the scene observing Stansberry's activities emerged from their vehicle. One identified himself as a police officer and ordered defendant to freeze. She turned toward the police officers and fired her weapon in their direction. The shot defendant fired toward the officers did not strike any of them, but shattered the glass in a door of a nearby hotel. A child inside the hotel, Michael K., was struck in the eye by the shattering glass and sustained a serious injury. His mother, Kimberly K., was nearby but was not injured. In an exchange of fire, the officers shot defendant, and she suffered a spinal cord injury.
In a juvenile wardship proceeding, the juvenile court dismissed allegations that defendant had attempted to murder Stansberry and the three police officers involved in the fracas. The court found true the allegations that defendant committed an assault with a firearm upon each of the three officers in violation of Penal Code section 245, subdivision (d)(1).[1] The court also found true the allegations that defendant committed an assault with a firearm upon Stansberry and upon Michael K., in violation of section 245, subdivision (a)(2). The court dismissed allegations that defendant committed mayhem upon Michael K. in violation of section 203, and also dismissed an allegation that she committed an assault with a firearm upon Kimberly K. As to each of the sustained allegations, the court also found true the allegation that defendant used a firearm in the commission of the offense pursuant to section 12022.5, subdivision (a). The court made a finding that defendant had fired at least one round at the officers in the direction of the hotel where Michael K. was injured. In dismissing the mayhem count, the court observed that defendant was not aware of the presence of Michael K. The court also made a finding "as a matter of law that in the shooting of Michael K., defendant here fired at the police officers, that the boy was behind those police officers, that the ricocheting of the bullets caused the glass to fracture, which penetrated the eye of the minor, causing him ... at least at the present time to lose vision out of that eye, to a certain extent. And as a consequence he is a victim of that assault...." The court also explained its disagreement with defense counsel's assertion that the injury was unforeseeable, stating: "Certainly, if you fire in an urban area at an individual and a glass structure [is] behind that person you are firing at, the chances are certainly reasonable that the glass that's in the direction of your bullet can shatter causing it to hit people."
The court committed defendant to the California Youth Authority, calculating that her maximum period of confinement would be for a period of 17 years and eight months, comprised of the following: an eight-year base term for the assault with a firearm upon one of the police officers, plus a five-year consecutive firearmuse enhancement pursuant to section 12022.5, subdivision (a)[2] (as well as concurrent maximum terms of 13 years for the remaining two enhanced counts of assault with a firearm upon a police officer); a one-year consecutive sentence for the assault with a firearm upon Stansberry, plus a 16-month consecutive firearm-use enhancement; and a one-year consecutive *733 sentence for the assault with a firearm upon Michael K., plus a 16-month consecutive firearm-use enhancement.[3]
On appeal, in addition to claims not raised here, defendant contended that the juvenile court erred in committing her to the California Youth Authority for a maximum term that included a firearm-use enhancement for the assault on Michael K. The majority opinion of the Court of Appeal rejected this claim. One justice filed a concurring and dissenting opinion, concluding that the firearm-use enhancement may not be imposed in connection with the term for the assault on Michael K. We granted defendant's petition for review.

II
At the time these offenses were committed, section 12022.5, subdivision (a), provided in relevant part that "any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison of three, four, or five years...." (Stats.1993, ch. 611, § 31.5, p. 3581.)
This court has held that multiple firearm-use enhancements may be imposed pursuant to section 12022.5, subdivision (a), when the defendant uses a firearm in a single, indivisible transaction that results in injury to multiple victims. (People v. King (1993) 5 Cal.4th 59, 79, 19 Cal. Rptr.2d 233, 851 P.2d 27 (King).) In reaching this decision in King, we overruled this court's earlier ruling in In re Culbreth (1976) 17 Cal.3d 330, 130 Cal. Rptr. 719, 551 P.2d 23 (Culbreth), a case that held that only one enhancement could be imposed pursuant to section 12022.5 when "the charged offenses are incident to one objective and effectively comprise an indivisible transaction." (17 Cal.3d at p. 333, 130 Cal.Rptr. 719, 551 P.2d 23.) In the Culbreth case, we concluded that the intent of the Legislature in enacting section 12022.5 was to "deter the use of firearms on subsequent occasions" (17 Cal.3d at p. 333, 130 Cal.Rptr. 719, 551 P.2d 23), but the King opinion disagreed, finding that the statutory language did not support this premise: "Nothing limits the enhancements to one for every separate occasion, whatever that might mean." (5 Cal.4th at p. 77, 19 Cal.Rptr.2d 233, 851 P.2d 27.)
In Culbreth, the defendant used a rifle to kill his wife, his mother-in-law, and his brother-in-law in rapid succession. We considered whether the sentence for each of two counts of second degree murder could be enhanced pursuant to section 12022.5,[4] or could be enhanced only once. In determining that only one enhancement was proper, we stated: "The legislative purpose of section 12022.5 has been described as deterrence, i.e., to deter the use of firearms on subsequent occasions. Thus it has been held that where there are consecutive robberies in several communities over a period of several hours, a defendant may not bootstrap himself into avoidance of additional penalties by claiming that the series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composed an indivisible transaction. [Citations.] But if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction, then section 12022.5 may be invoked only once and not in accordance with the number of victims." (Culbreth supra, 17 Cal.3d at pp. 333-334, 130 Cal.Rptr. 719, 551 P.2d 23.)
*734 We pointed to similar conclusions reached in Court of Appeal decisions limiting firearm-use enhancements to one per discrete occasion, and announced: "It is clear that the term `uses' was deliberately employed by the Legislature when it adopted section 12022.5. To `use' means, among other things, `"to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage."' [Citation.] The `end or process' here was the commission of a single frenetic act of violence which, unfortunately, resulted in multiple victims." (Culbreth, supra, 17 Cal.3d at p. 334, 130 Cal.Rptr. 719, 551 P.2d 23.) In specifically rejecting the People's theory that "no consideration of the facts is necessary; a body count of victims is sufficient to establish the number of separate transactions," we stated that "[t]his simplistic formula is untenable; an analysis of the events is essential to ascertain the apparent intent and objective of the defendant." (Id. at p. 335, 130 Cal.Rptr. 719, 551 P.2d 23.) We concluded: "Such an analysis here clearly indicates the homicides  the two second degree murders and the manslaughter  occurred in a matter of seconds, all part of a single melee. There was but one occasion, one intent, one objective, one indivisible transaction. Therefore section 12022.5 may be applied only once." (Ibid.)
In King, however, in which the defendant shot two victims in rapid succession during a robbery, we rejected the "single occasion" rule of Culbreth. We observed that nothing in the language of section 12022.5, subdivision (a), limits the sentencing court to imposing only one enhancement per "occasion." We agreed with Court of Appeal cases criticizing the Culbreth rule on the ground that it rewarded the defendant who acted with the broader criminal objective. "`A test based in part on intent and objective is seriously flawed for several reasons: it favors those who harbor the graver criminal intent over those whose crimes are, in part, largely reactions to circumstances; worse, the test is so subjective that it approaches arbitrariness in its application.'" (King, supra, 5 Cal.4th at p. 73, 19 Cal.Rptr.2d 233, 851 P.2d 27.) We also agreed with appellate court observations that it is illogical to restrict the sentencing court to one firearm-use enhancement when a defendant simultaneously victimizes a number of persons on a single occasion, while permitting multiple enhancements when the defendant victimizes the same number of persons in a series of crimes  both in terms of the effect upon the victims and the culpability of the defendant. We related an example, given by one Court of Appeal, as an aid in resolving the issue presented in the King case: "`An armed defendant convicted of robbing seven solitary attendants at seven gas stations on the same street in the same evening may receive seven consecutive sentences and seven consecutive gun use enhancements [under the Culbreth rule].... But the armed outlaw who robs a group of seven individuals at one gas station may receive seven consecutive robbery sentences and only one firearm use enhancement. On what basis is a more lenient sentence for the [latter] felon justifiable? Are the "extra" six victims any less terrorized because they were from the outset, part of a group? Are one felon's criminal actions less blameworthy than those of the others? [¶] ... [The Culbreth rule] is just another way of saying that the more grandiose the perpetrator's original plan, in terms of the number of victims, the less severe will be the punishment  a grotesque rule of law by any standard.'" (King, supra, 5 Cal.4th at pp. 73-74, 19 Cal.Rptr.2d 233, 851 P.2d 27.)
We also observed that in the Culbreth case, the defendant clearly "used" a firearm each time he shot a victim  noting in passing, however, that the victims were not killed with a single bullet. (King, supra, 5 Cal.4th at pp. 77, 79, 19 Cal.Rptr.2d 233, 851 P.2d 27.) We also rejected Culbreth's deterrence rationale, expressing a "doubt that the Legislature intended either *735 deterrence or punishment to cease with the first victim. We think it far more likely, and consistent with the actual statutory language, that the Legislature intended to deter (and undoubtedly to punish) firearm use against multiple victims more strongly than firearm use against a single victim." (5 Cal.4th at p. 78, 19 Cal.Rptr.2d 233, 851 P.2d 27.)
As we explained in King, nothing in the language of section 12022.5, subdivision (a), limits the sentencing court to one enhancement per "occasion" of firearm use. As respondent points out, the sentencing court is not limited to imposing one enhancement per occasion of firearm use, but rather is to impose one enhancement for each felony in which a firearm has been used. Defendant does not object to the juvenile court's having sustained the allegations of four assaults with a deadly weapon on the basis of what may have been only one shot  nor does she object to including in the maximum period of confinement the three firearm-use enhancements added for the assaults on the police officers. The use enhancements simply follow from the allegations having been sustained as to the substantive offenses of assault with a firearm.
Under the King rationale, a robber who enters a convenience store and obtains the valuables of seven patrons with a single display of a firearm has committed seven robberies, and each felony is subject to enhancement for use of a firearm. Keeping in mind both the effect on the victims and the culpability of the defendant, we see no distinction between this situation and one in which a defendant commits multiple assaults with a single shot from a firearm.
The language of section 12022.5, subdivision (a), and the intent of the Legislature in enacting this provision support the conclusion that an enhancement for each assault is appropriate in the present case. The intent of the enhancement provision is to "`deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of a crime'" (People v. Bland (1995) 10 Cal.4th 991, 996, 43 Cal.Rptr.2d 77, 898 P.2d 391), and to "`deter the use of firearms in the commission of violent crimes by prescribing additional punishment for each use.'" (People v. Fierro (1991) 1 Cal.4th 173, 225, 3 Cal.Rptr.2d 426, 821 P.2d 1302.) As one Court of Appeal has put it: "In other words, the term `use,' as employed in this statute [section 12022.5] should be broadly construed, consistent with common usage, to check the magnified risk of serious injury which accompanies any deployment of a gun in a criminal endeavor." (People v. Granado (1996) 49 Cal.App.4th 317, 322, 56 Cal.Rptr.2d 636.) It is clear that a person who engages in an urban gun battle is more culpable than one who fires a weapon at an isolated individual. The risk of injury to bystanders clearly is a risk arising from even one firing of the weapon. The more culpable and dangerous the behavior, the greater the need exists for effective deterrence. An increased sentence measured by the risk of harm to multiple victims reflects a rational effort to deter such reprehensible behavior.
Defendant hardly can claim that she did not "use" a firearm in her assault upon Michael K. Relying upon the common meaning of the term "use," we have declared that "`[u]se' means, among other things, `to carry out a purpose or action by means of,' to `make instrumental to an end or process,' and to `apply to advantage.' (Webster's New Internat. Diet. (3rd ed. 1961).) The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that `uses' be broadly construed." (People v. Chambers (1972) 7 Cal.3d 666, 672, 102 Cal.Rptr. 776, 498 P.2d 1024.) We have said that a firearm-use allegation may be established as true if the defendant "utilized the gun at least as an aid in completing an essential element of the [underlying] *736 crime...." (Id, at pp. 672-673, 102 Cal.Rptr. 776, 498 P.2d 1024.)
Employing these definitions, to the extent that defendant committed an assault upon Michael K. with a firearm within the meaning of section 245, subdivision (a)(2)  a substantive charge that defendant does not contest  we conclude that defendant made the firearm "instrumental" in the assault, or "applied" the firearm to advantage, in connection with the assault upon Michael K. Further, the use of the firearm aided in the completion of an element of the assault against Michael K.  the attempted (and indeed completed) battery against him. (See People v. Colantuono (1994) 7 Cal.4th 206, 214-217, 26 Cal.Rptr.2d 908, 865 P.2d 704.)
We also observe that section 1203.06, subdivision (b)(3), in language that has been interpreted as applicable in defining the term "use" in section 12022.5, provides that "use" means "to display a firearm in a menacing manner, to intentionally fire it, or to intentionally strike or hit a human being with it." (See People v. Johnson (1995) 38 Cal.App.4th 1315, 1319, 45 Cal. Rptr.2d 602; CALJIC No. 17.19; see also People v. Hamilton (1998) 61 Cal.App.4th 149, 155, 71 Cal.Rptr.2d 359.) Defendant does not contest that she fired her weapon intentionally, and under the quoted definition nothing more is required. Under any reasonable definition of the word "use," if we ask what instrumentality defendant employed in committing the assault upon Michael K., it is obvious that she used something, and that the weapon used was a firearm and not any other object. The circumstance that on the same occasion, and indeed in the same act, she used the firearm when she committed the assault against the police officers does not detract from the reality that she also "used" the firearm in the assault upon Michael K. within the meaning of section 12022.5, subdivision (a).
As for the statutory phrase "in the commission of," nothing indicates that the Legislature intended to limit application of the statute to crimes in which the defendant possessed the intent to injure a particular victim. We have interpreted identical language in section 12022, subdivision (a), providing for a sentence enhancement for being armed "in the commission of a felony, to require only that "the `arming' take place during the underlying crime and that it have some 'facilitative nexus' to that offense." (People v. Bland, supra, 10 Cal.4th at p. 1002, 43 Cal.Rptr.2d 77, 898 P.2d 391, italics in original.) Similarly, we have concluded that the phrase "in the commission of a felony, as used in section 12022.5, means during and in furtherance of the felony. (People v. Fierro, supra, 1 Cal.4th at pp. 225-227, 3 Cal. Rptr.2d 426, 821 P.2d 1302 [defendant who shoots one victim, thereby facilitating his escape from the robbery of another victim, has used the firearm in the commission of the robbery].) In the present case, defendant's use of the firearm not only "furthered" or "facilitated" the commission of the offense in question (the assault on Michael K.); the firearm actually was the instrumentality used to perform the assault. In these circumstances, defendant used the firearm "in the commission of the assault.
Defendant also contends that because her purpose was not to injure or assault Michael K. when she fired the weapon, she did not "use" the firearm in connection with her assault on this victim. Contending that there is no statutory definition of the term "use," she urges that the deterrent objective of the statute is not served by imposing multiple enhancements when a single shot results in offenses being committed against more than one victim and the presence of one of the victims is unknown to the perpetrator. The dissenting justice in the Court of Appeal also contended that defendant's purpose  or lack of purpose  should be considered in determining whether to impose the use enhancement, as should the circumstance that only a single shot was fired.
*737 Defendant's contention that the use enhancement applies to an assault with a firearm count only if the defendant specifically intended to assault or injure the particular victim finds no support in the words of the statute and is inconsistent with the nature of the underlying crime and with the purpose of the enhancement statute. The underlying substantive offense of assault with a firearm does not require a specific intent to injure a particular victim. As we have said in discussing the mens rea of assault with a deadly weapon, "[although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm." (People v. Colantuono, supra, 7 Cal.4th at p. 214, 26 Cal.Rptr.2d 908, 865 P.2d 704.) We observed that because the law seeks to prevent the wrongful application of physical force upon the victim "irrespective of any actual purpose to cause it," the mens rea element of assault is established by proof of general criminal intent. (Id. at p. 217, 26 Cal. Rptr.2d 908, 865 P.2d 704.) We emphasized that "[t]he pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm." (Id. at p. 218, 26 Cal.Rptr.2d 908, 865 P.2d 704.)
It would be anomalous to suppose that the Legislature, in contrast, did intend to impose such a specific intent requirement as to the firearm-use enhancement, particularly when enhancements do not constitute separate crimes or offenses, but simply are the basis for the imposition of additional punishment for the underlying substantive offense. (People v. Wims (1995) 10 Cal.4th 293, 304, 41 Cal.Rptr.2d 241, 895 P.2d 77.) Indeed, when the Legislature intends to require proof of a specific intent in connection with a sentence enhancement provision, it has done so explicitly by referring to the required intent in the statute. (See, e.g., former § 12022.7, subd. (a), as amended by Stats. 1994, ch. 873, § 3.) Finally, with respect to the concern of the dissenting justice that an unintended injury should be punished less severely than an intentional one, the sentencing court may take intent into account in determining whether to impose a concurrent or consecutive term on the underlying assault, and in determining whether to impose a lower, middle, or upper term.
As noted, defendant claims no possibility of deterring the use of a firearm exists when the victim is unintended. We reject this claim. By such reasoning, the substantive offense against Michael K. also should not be punished  although defendant does not challenge the finding or commitment for that offense, and the law is contrary to her contention. As the trial court observed, to fire a weapon in an urban area and thereby injure others is reprehensible risk-taking behavior that effectively may be deterred by the firearmuse enhancement, even when the perpetrator does not specifically intend to injure one of his or her victims or intends only to assault a person other than the victim. Further, we have recognized that the firearm-use enhancement may be effective in deterring a defendant from making any use of a gun in his or her criminal enterprises (People v. Masbruch (1996) 13 Cal.4th 1001, 1014, 55 Cal.Rptr.2d 760, 920 P.2d 705), and this deterrent effect will operate irrespective of the defendant's intent as to a particular victim.[5]
*738 In essence, defendant, urging that a single shot is a single occasion of firearm use and should be subject only once to enhanced punishment, would have us return to the discredited "single occasion" rule of Culbreth. We decline to do so. The Legislature has expressed its purpose of deterring unlawful firearm use and avoiding the ensuing injury to the public, and we have recognized that the number of victims exposed to the use of a firearm is relevant to the defendant's culpability. (See King, supra, 5 Cal.4th at p. 78, 19 Cal.Rptr.2d 233, 851 P.2d 27; see also People v. Alvarez (1992) 9 Cal.App.4th 121, 128, 11 Cal.Rptr.2d 463 ["a defendant who commits an act of violence against more than one person is legitimately punished for each victim of his violence"].) We therefore reject defendant's contention that section 12022.5, subdivision (a), should be interpreted to provide that even if a single shot facilitates the commission of more than one felony, only one firearm-use enhancement may be imposed. Instead we conclude that defendant used a firearm in the commission of each of the multiple assaults upon the three officers and Michael K., even though such use occurred on a single occasion and apparently involved a single act.

III
The judgment of the Court of Appeal is affirmed.
KENNARD, J., BAXTER, J., WERDEGAR, J., CHIN, J., and BROWN, J., concur.
Concurring Opinion by MOSK, J.
I concur under compulsion of People v. King (1993) 5 Cal.4th 59, 19 Cal.Rptr.2d 233, 851 P.2d 27.
Defendant does not dispute that she committed the felony of assault against the police officer by shooting a gun; she thus "personally use[d] a firearm in the commission ... of [that] felony," within the meaning of Penal Code section 12022.5. She also concedes that she committed the felony of assault against Michael K. when the same bullet shattered a window, causing Michael K. eye injuries from broken glass. By definition, she thus "personally use[d] a firearm in the commission ... of [that] felony" (ibid.) as well, regardless of her subjective purpose; accordingly, a separate enhancement with regard to that offense was properly added to her sentence.
NOTES
[1] All statutory references are to the Penal Code, unless otherwise indicated.
[2] At the time of the offenses, section 12022.5, subdivision (a), established a term of three, four, or five years for the use enhancement. (See Stats. 1993, ch. 611, § 31.5, p. 3581.)
[3] Pursuant to section 1170.1, subdivision (a), the 16-month terms represented one-third the midterm for the firearm-use enhancements.
[4] The remaining voluntary manslaughter count was not subject to enhancement pursuant to section 12022.5 at that time.
[5] Defendant's contention that to impose multiple firearm-use enhancements in the present case undermines the provisions of the determinate sentencing law calling, for example, for an upper term or consecutive sentence in the case of multiple victims, and ignores the reality that the enhancement statutes authorize the imposition of multiple enhancements in addition to the punishment imposed for the underlying offense, whether or not the factual basis for the enhancement may be used in calculating a base term for the substantive offense. In the case of the firearm-use enhancement, for example, it is clear that the Legislature intended to impose additional punishment even though the firearm use is an element of the underlying offense of assault as defined by section 245. (See § 12022.5, subd. (d); People v. Johnson (1996) 51 Cal. App.4th 1329, 59 Cal.Rptr.2d 798.)