Filed 4/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B296139 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA092410) |
| v. | |
| DANA OFFLEY et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, John A. Torribio, Judge. Reversed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant Dana Offley.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant Robert Mitchell Keller.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants and appellants Dana Offley and Robert Mitchell Keller challenge the trial court's denial of their petitions under Penal Code section 1170.95[1] for resentencing on their murder convictions. The trial court found that both defendants were ineligible for relief because they had received sentence enhancements under section 12022.53, subdivision (d) for intentionally discharging a firearm and proximately causing the victim's death. We hold that an enhancement under section 12022.53, subdivision (d) does not in itself preclude a petitioner from obtaining relief under section 1170.95. For this reason, we reverse the denial of Offley's petition. In Keller's case, the trial court misinterpreted the record. Keller's enhancement was based on section 12022.53, subdivision (e)(1)—the jury found that a principal to the crime, not Keller himself, discharged a firearm. This enhancement does not disqualify Keller from relief and likewise requires reversal.

## FACTS AND PROCEEDINGS BELOW

Offley and Keller were two of five defendants charged with taking part in a gang-related shooting in 2006 in which one victim, Alex Barrales, was killed, and another, Pedro Portillo, was seriously wounded. Evidence at trial indicated that members of the 76 East Coast Crips gang ambushed a vehicle driving through their territory, believing that the vehicle's occupants were members of a rival gang. At least three individuals fired shots into the vehicle. Prosecutors charged both Offley and Keller with one count of murder, one count of attempted murder, and one count of firing into an occupied

---

[1] Subsequent statutory references are to the Penal Code.

vehicle. They alleged that Offley personally and intentionally fired a handgun, proximately causing the death of Barrales.

At the end of the trial, the jury received an instruction regarding the natural and probable consequences doctrine in cases of conspiracy, as follows: "A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime."

A jury convicted both Offley and Keller of: (1) one count of murder (§ 187, subd. (a)); (2) one count of attempted murder (§§ 187, subd. (a), 664); and (3) one count of shooting at an occupied motor vehicle (§ 246). The jury found that both defendants committed the crimes for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1)(C).) The defendants' convictions differed in two respects. First, the jury convicted Offley of second degree murder, and Keller of first degree murder. Second, the jury found that Offley personally and intentionally discharged a firearm, proximately causing great bodily injury and death to the victim. (§ 12022.53, subd. (d).) The jury also found firearm enhancements true with respect to Keller, but found that *a principal* to the crimes, not specifically Keller himself, fired the weapon. (§ 12022.53, subds. (d) & (e)(1).) The trial court imposed an aggregate sentence of 80 years to life to Offley, and life with the possibility of parole plus an additional 75 years to life to Keller.

3

Both defendants appealed.  Offley challenged the firearm enhancement on his murder conviction, contending that there was insufficient evidence to prove that he personally discharged a firearm causing the victim's death.  Keller challenged the imposition of a gang enhancement that was erroneously listed in his abstract of judgment.  This court agreed with Keller and amended his judgment accordingly.  (*People v. Keller* (Nov. 25, 2008, B199617) [nonpub. opn.] (*Keller*), pp. 3–6.)  This court affirmed the judgment as to Offley, stating that "[w]e need not decide whether there was sufficient evidence that Offley personally and intentionally discharged a firearm proximately causing the death of" the victim because "under the sentencing scheme for crimes using guns and committed for the benefit of a criminal street gang, the Penal Code required the trial judge to enhance Offley's sentence by 25 years to life regardless of whether he personally discharged a firearm proximately causing death so long as a principal discharged a firearm proximately causing death."  (*Id.* at p. 3.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which, with only one exception not relevant here, amended section 188 to require proof of personal malice aforethought in all murder convictions.  (See § 188, subd. (a)(3).)[2]  The effect of the new law was to eliminate liability for murder under the natural and probable consequences doctrine.  (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1092-1093, review granted Nov. 13, 2019, S258175 (*Lopez*).)

---

[2] The sole exception is in cases of felony murder, where the new law also established more strict standards of liability.  (See § 189, subd. (e).)

The legislation also enacted section 1170.95, which establishes a procedure for vacating murder convictions for defendants who could not have been convicted of murder under the new law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

In January 2019, both defendants filed petitions in the trial court for resentencing under section 1170.95. They both filed form declarations that included the information required by section 1170.95, subdivision (b)(1). Defendants also requested the court to appoint counsel to represent them. Both defendants also filed separate declarations explaining why they believed they were entitled to relief. Keller claimed that "there was no evidence presented that [he] was the actual killer. No witness testified that they saw [him] fire a weapon." Offley also claimed that he did not kill the victim. He cited portions of the trial transcript in his case in which the prosecutor agreed that a bullet from Offley's gun could not have killed Barrales.

The trial court denied both defendants' petitions without appointing counsel or holding a hearing. According to the court, the defendants were ineligible for relief because the record showed that the jury found they intentionally fired a weapon at the victim and caused great bodily injury or death.

## DISCUSSION

Defendants contend that the trial court erred by denying their petitions for resentencing under section 1170.95. Offley argues that the trial court erred in determining that he was ineligible for resentencing because his sentence was enhanced under section 12022.53, subdivision (d) for personally and intentionally discharging a firearm and proximately causing great bodily injury and death. Keller contends that the trial

court erred because his firearm enhancement was based on the jury's finding that a *principal* to the crime, not Keller himself, fired a weapon and caused great bodily injury and death. We reverse the trial court's denial of both defendants' petitions because both Offley and Keller made a prima facie case that they fell within the provisions of section 1170.95.

### A.    S*enate Bill No. 1437 and Section 1170.95*

Murder has long been defined as "the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "Malice aforethought may be express or implied. (§ 188.) 'Express malice is an intent to kill. . . . Malice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 941–942 (*Beltran*).)

Prior to the enactment of Senate Bill No. 1437, however, a defendant who aided and abetted a crime that ended in a victim's death could be convicted of murder under the natural and probable consequences doctrine even if the defendant personally did not act with malice aforethought. The natural and probable consequences doctrine provides that " '[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.' " (*People v. Medina* (2009) 46 Cal.4th 913, 920.) " 'By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget

6

offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense.' " (*People v. Chiu* (2014) 59 Cal.4th 155, 164 (*Chiu*).)[3]

Senate Bill No. 1437 was enacted to abolish this doctrine in cases of murder. It amended section 188 to require that, when the felony murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought," and that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2, p. 6675; *In re R.G.* (2019) 35 Cal.App.5th 141, 144.)[4] As a result, the natural and probable consequences doctrine can no longer support a murder conviction. (*Lopez*, *supra*, 38 Cal.App.5th at p. 1103 & fn. 9; Stats. 2018, ch. 1015, § 1(f), p. 6674.) The change did not, however, alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily "know and share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; see

---

[3] In *Chiu*, our Supreme Court abrogated the use of the natural and probable consequences doctrine to prove first degree premeditated murder, but it did not change the law regarding its application to second degree murder. (*Chiu*, *supra*, 59 Cal.4th at p. 166.)

[4] The new law also amended section 189 by adding a requirement to the felony-murder rule that a defendant who was not the actual killer or a direct aider and abettor must have been a major participant in the underlying felony and acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3, p. 6675.) This aspect of the new law is not relevant here.

7

*Chiu, supra*, 59 Cal.4th at p. 167 [a direct aider and abettor "acts with the mens rea required for first degree murder"].) One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law.

Senate Bill No. 1437 also added section 1170.95, which permits a person convicted of murder under a natural and probable consequences theory to petition the court to have the murder conviction vacated and to be resentenced. (§ 1170.95, subds. (a) & (e); Stats. 2018, ch. 1015, § 4, pp. 6675–6677.) Thus, section 1170.95, subdivision (a) provides that a person convicted of felony murder or murder under a natural and probable consequences theory may petition the trial court to have his or her murder conviction vacated and be resentenced on any remaining counts if the following conditions are met: (1) A charging document was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) The petitioner was convicted of first or second degree murder following a trial or an accepted plea; and (3) The petitioner could "not be convicted of first or second degree murder because of changes to Section[s] 188 or 189" made by Senate Bill No. 1437. (§ 1170.95, subd. (a).)

Section 1170.95, subdivision (c) sets forth the trial court's responsibilities upon the filing of a complete petition: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of

service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

As we recently explained in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598 (*Lewis*), section 1170.95, subdivision (c) creates a two-step process for determining a defendant's eligibility.[5]  First, the trial court must determine whether the defendant has made a "prima facie showing [that he] 'fall[s] within the provisions' of the statute." (*Lewis*, *supra*, 43 Cal.App.5th at p. 1140.) The trial court may examine the record of conviction (*id.* at pp. 1137–1138), and may not reject a defendant's petition unless it determines that "the petitioner is ineligible for relief as a matter of law." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493 (*Verdugo*).) Only after the court concludes that the defendant satisfies this requirement does "the trial court's duty to appoint counsel . . . arise." (*Lewis*, *supra*, 43 Cal.App.5th at p. 1140; accord, *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333.) If a defendant's petition survives both stages of review under

---

[5] For the reasons we explained in *Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140, we reject Offley's contention that there is only a single stage of prima facie review under section 1170.95, and that the trial court is required to appoint counsel in all cases in which a defendant files a petition containing all the information required by section 1170.95, subdivision (b)(1).

section 1170.95, subdivision (c), the trial court must issue an order to show cause and hold a hearing to determine whether to grant the petition and resentence the defendant.  (See § 1170.95, subd. (d); *Lewis*, *supra*, 43 Cal.App.5th at p. 1136.)

### B.     *The Trial Court Erred by Denying Defendants' Petitions at the First Stage of Prima Facie Review*

The trial court summarily denied both defendants' petitions at the first stage of review under section 1170.95, subdivision (c), on the ground that the jury found that both defendants personally fired a weapon and proximately caused great bodily injury or death.  The court appears to have concluded that both defendants received sentence enhancements pursuant to section 12022.53, subdivision (d).  That subdivision provides that "any person who, in the commission of a [specified] felony . . . personally and intentionally discharges a firearm and proximately causes great bodily injury, . . . or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."[6]

We reverse the denial of Offley's petition because an enhancement under section 12022.53, subdivision (d) does not establish as a matter of law that a defendant acted with malice aforethought.  It is therefore insufficient on its own to justify denying a defendant's petition under section 1170.95 at the

---

[6] The defendants' information specified that the enhancement under section 12022.53, subdivision (d) applied to the shooting of Barrales, who was killed, and did not merely suffer great bodily injury.

first stage of review.  (See *Verdugo, supra*, 44 Cal.App.5th at pp. 329–330.)  We reverse the denial of Keller's petition because the trial court misinterpreted the record.  Keller's enhancement was under section 12022.53, subdivision (e)(1) and showed only that a principal to the crime, not Keller himself, fired a weapon and caused the victim's death.

### 1.    *An enhancement under section 12022.53, subdivision (d) does not preclude relief under section 1170.95*

The trial court erred by denying Offley's petition because the existence of an enhancement under section 12022.53, subdivision (d) does not show that a defendant acted with malice aforethought.  It therefore does not establish as a matter of law that Offley could still be convicted of murder under the new law and is ineligible for relief under section 1170.95.[7]

Both express and implied malice require proof of the defendant's mental state.  In the case of express malice, the defendant must have intended to kill.  (*Beltran, supra*, 56 Cal.4th at p. 941.)  Implied malice also involves a mental component, namely a " 'conscious disregard for the danger to life that the

---

[7] Offley contends that the trial court erred by relying on the enhancement as a basis for rejecting his petition because, in the direct appeal of his conviction, this court did not rule on his challenge to the sufficiency of the evidence supporting the enhancement.  This court stated that "[w]e need not decide whether there was sufficient evidence that Offley personally and intentionally discharged a firearm proximately causing the death of Barrales." (*Keller, supra*, B199617, p. 3.)  Because we hold that the enhancement does not disqualify Offley from relief, this argument is moot.

11

[defendant's] act poses.' " (*Id.* at pp. 941–942.) This requires " 'examining the defendant's subjective mental state to see if he or she actually appreciated the risk of his or her actions.' [Citation.] 'It is not enough that a reasonable person would have been aware of the risk.' " (*People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1358.)

Section 12022.53, subdivision (d) provides that the defendant must have intended to discharge a firearm, but does not refer to an "intent to achieve any additional consequence." (*People v. Lucero* (2016) 246 Cal.App.4th 750, 759.) It is thus a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death. (*Id.* at pp. 759-760; *In re Tameka C.* (2000) 22 Cal.4th 190, 198.) The jury in this case was instructed accordingly. The trial court told the jury that it would need to decide "whether the defendant intentionally and personally discharged a firearm and proximately caused great bodily injury or death," but not whether he intended to kill or was aware of the danger to life that his act posed.

Because an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought. Of course, the trial court may look beyond the abstract of judgment and consider the entire record of conviction, including any prior Court of Appeal opinions in the case, in determining whether a petitioner has made a prima facie case of eligibility. (*Lewis, supra,* 43 Cal.App.5th at p. 1136 & fn. 7.) In many instances, additional information from the record will establish

12

that a defendant's conviction was not based on the natural and probable consequences doctrine, and that the jury must have convicted the defendant on the basis of his own malice aforethought.  For example, if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied.

In this case, however, we cannot rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting Offley.  The trial court instructed the jury on the natural and probable consequences doctrine as part of its instruction on conspiracy liability:  "A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime."

The prosecutor argued that the jury could convict the defendants on the basis of this instruction.  In closing arguments, the prosecutor argued that the defendants were part of a conspiracy, that the "common design of [the] conspiracy" was "assault with a firearm," and that any member of the conspiracy was "guilty of, not only that particular crime, but also the natural and probable consequence of any crime of the co-conspirator."

We cannot exclude the possibility that the jury believed Offley acted without intending to kill Barrales or consciously disregarding that risk.  The jury might have concluded that Offley intended to take part in a conspiracy to commit assault

13

with a firearm, or to fire into an occupied vehicle, with the aim of either injuring or merely frightening Barrales. The jury could have then concluded that Barrales's death was the natural and probable consequence of the conspiracy and convicted him of murder without finding beyond a reasonable doubt that he acted with malice aforethought. For this reason, we cannot say that Offley "is ineligible for relief as a matter of law." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329.)

## 2. *Keller's enhancement did not indicate that he personally fired a weapon*

Keller's enhancement was based on section 12022.53, subdivision (e)(1). That subdivision applies the penalties of section 12022.53, subdivisions (b) through (d) to all principals of a crime regardless of whether or not they personally fired a weapon, so long as the crime was committed for the benefit of a criminal street gang (see § 186.22, subd. (b)), and a principal to the crime discharged a firearm causing great injury or death. The enhancement finding therefore shows only that a principal to the crime proximately caused Barrales's death. It does not show that Keller played a direct role in killing the victim. Furthermore, as we have seen, the jury received instructions that would have allowed them to convict Keller on the basis of the natural and probable consequences doctrine. We therefore cannot determine as a matter of law that Keller acted with malice aforethought in the killing of Barrales.[8]

---

[8] The trial in this case predated *Chiu*, in which our Supreme Court held that a defendant could be convicted of second degree murder, but not first degree murder, under

## C.    *Proceedings on Remand*

Because the trial court erred by denying the petitions at the first stage of review under section 1170.95, subdivision (c), we will remand the case with instructions to proceed to the second stage of review under that subdivision.  Thus, "the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner[s] may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner[s] make[ ] a prima facie showing that [they are] entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)

---

the natural and probable consequences doctrine.  (*Chiu*, *supra*, 59 Cal.4th at p. 166.)  Consequently, we cannot rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting Keller of first degree murder.

15

## DISPOSITION

The trial court's order is reversed, and the trial court is ordered to appoint counsel to represent both appellants for further proceedings under section 1170.95.

CERTIFIED FOR PUBLICATION.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



WEINGART, J.*

---

*\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*