Filed 10/6/20  P. v. Iraheta CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTIAN IRAHETA,<br><br>    Defendant and Appellant. | B300621<br>(Los Angeles County<br> Super. Ct. No. BA455206) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.   Affirmed.

Law Offices of Andy Miri and Andy Miri for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Colleen M. Tiedemann, and David Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Christian Iraheta appeals from a judgment sentencing him to 40 years to life in prison after a jury convicted him of attempted murder (count 1; Pen. Code,[1] §§ 664/187, subd. (a), 664, subd. (a)), and assault with a firearm causing great bodily injury (count 2; § 245, subd. (a)(2), 12022.7, subd. (a)). The jury also found true an allegation that the attempted murder was willful, deliberate, premeditated, and criminal street gang and firearm allegations as to both counts (§§ 12022.5; 12022.7, subd. (a); 12022.53, subd. (d); 186.22, subd. (b)(1)(C)).

On appeal, defendant contends there is insufficient evidence to support the jury's finding that the attempted murder was deliberate and premeditated. He also argues the trial court failed to satisfy its sua sponte duty to instruct the jury on the lesser included offense of voluntary attempted manslaughter and that, because there is insufficient evidence he was actually the shooter, he is entitled to resentencing. We conclude the record contains sufficient evidence to support the jury's finding that defendant's acts were deliberate and premediated, the evidence at trial did not warrant an instruction on a lesser included offense and, even if it had, any error would be harmless. We also reject defendant's claim that there was insufficient evidence he was the shooter and affirm the judgment.

---

[1]     Further undesignated statutory references are to the Penal Code.

2

# BACKGROUND

*The Shooting*

Shortly after 10:00 p.m. on January 27, 2017, Hernan Cocom, Sr. and his sons, Emmanuel and Hernan Cocom, Jr.[2] returned to their home on 39th Street in Los Angeles, after completing the family's usual Friday night chore of washing its laundry at a laundromat. Hernan Sr. parked the family's van near their home, vacated the car, and left the key in the ignition. As Emmanuel and Hernan began carrying laundry into the apartment, they heard the screech of tires and turned to see their van speeding away with its doors still open, spilling laundry onto the street. When they ran outside, Hernan Sr. said someone had stolen the van.

As the brothers spoke with their father, the men heard the sound of a car crash. Hernan Sr. began walking toward Normandie (retrieving clothing from the street as he went), followed by Hernan and Emmanuel. Two men approached, and Hernan heard one of the men yell at them, "if you know what's good for you, go home." Emmanuel tried to explain that someone had stolen the family van, to which the man replied, "Fuck your family." Collectively, the brothers recalled that the man who spoke to them (from a distance of about five feet) was Latino, about 5 foot five or six inches, wore baggy, dark clothes,

---

[2]     For clarity, and intending no disrespect, we will sometimes refer to these members of the Cocom family as Hernan Sr., Emmanuel and Hernan, respectively.

3

including a hooded sweatshirt, "looked relatively young" (Emmanuel thought he may have been a teenager), and carried a small, short-haired white puppy, possibly a Pit Bull. The men walked past Hernan, Emmanuel, and Hernan Sr.

The Cocoms continued walking. Near the crash site, Hernan Sr. spotted one of the same men, who wore a hoody covering his face, and told his sons, "He's part of them." When Hernan Sr. placed a hand on the man's shoulder or elbow to ask who took his van, the man pushed his hand away. Hernan Sr. denied having punched or threatened the man, or that the two engaged in any physical struggle or altercation, Emmanuel and Hernan testified they saw their father engage in a short (5-7 seconds) struggle to try to remove the man's hood so his sons could take his picture. There was no fight, but the man jabbed at Hernan Sr., who tried to restrain his arms; the two were interlocked. Nether Emmanuel nor Hernan was able to take a photo.

Hernan tried to separate the two men. As he did, Hernan looked up to see that defendant was about five feet away, pointing a silver revolver at him. All three of the Cocoms raised their arms in the air, and Hernan said, "it's fine, just go." Hernan testified the man with the gun looked like the one who had yelled at the brothers earlier, and still carried the dog. Both Hernan and Emmanuel believed it was the same person. The man said nothing. He stared at Hernan for 10 to 30 seconds, then shot him in the abdomen.

Authorities were called, and an ambulance took Hernan to a hospital. He suffered injuries to his intestine, colon, and leg, and

4

underwent surgery. It took months of rehabilitative therapy before he could walk normally. At the time of trial in June 2019 Hernan still suffered from PTSD.

*The Police Investigation*

Louie Cordero is defendant's stepbrother. In January 2017, Cordero and defendant shared a bedroom in their family's home on 39th Street, near Normandie. Cordero was interviewed by LAPD Officers Williams and Garcia early on January 28, 2017.[3] Cordero told the officers he had been intoxicated and on his way home when the incident occurred. Cordero admitted he was affiliated with the ATC (Alley Tiny Criminals) gang and had been present when Hernan, whom he did not know, was shot.

Cordero was interviewed again on March 3, 2017, by Officer Williams and Detective Chavez. He told the police that, on the night of January 27, he was walking toward King and Vermont, ran across

---

[3] Cordero was given immunity and subpoenaed to testify at trial. He testified he had been intoxicated the night of January 27, 2017, walking alone near 39th Street, and saw a group of five men in the area. He heard a gunshot, but it did not sound like it came from nearby. After Hernan was shot, Cordero, who was at the scene, was arrested and questioned at the police station about the shooting.

At trial, Cordero claimed not to remember what he told officers during his police interviews on January 28 or March 3, 2017 because he was intoxicated during both interviews. Cordero denied being a gang member. Cordero did confirm that, at the time of the shooting, there was a white Pit Bull puppy living at the house in which he lived with defendant.

defendant and another man on Denker and 39th, and walked with them toward Vermont. Cordero and defendant were walking and talking when the third man suddenly stole a car. Cordero had not known this would happen and tried to leave.

Several people tried to stop Cordero. When one of these men grabbed Cordero's sweater, defendant shot him. Cordero denied having fought with Hernan Sr. He said that when Hernan Sr. "got [his] sweater, . . . [defendant] just shot him." Defendant was four or five feet away when he shot Hernan.

At trial, Cordero testified that, at the time of the shooting, a white Pit Bull puppy named "Nino" (and no other dog) lived in the same house in which Cordero lived with defendant. Cordero confirmed that dog was depicted in a photograph taken by the LAPD taken during a search of the family's home and shown to him by the prosecution.

Defendant was arrested on March 3, 2017. While he was in jail during the latter half of March 2017, he had several (recorded) phone calls with Cordero. Excerpts from those recorded calls played for the jury reflect that the stepbrothers often discussed mundane details about the puppy's growth, his care, and the pup's increasingly aggressive tendencies. During one call that Cordero put on speaker, he told defendant Nino recognized defendant's voice.

Officer Williams searched the bedroom defendant shared with Cordero, and found several items marked with signs of ATC gang graffiti and tagging. Those items included a backpack with several ATC gang tags, a notebook containing a variety of styles of gang graffiti,

6

which he likened to similar "graph" notebooks that gang members use to practice tagging. Officer Williams also identified a photograph of a white dog he had seen at defendant's house.[4]

After he was released from the hospital Hernan reviewed three photographic lineups at the LAPD station. After reviewing the photos for about 10 minutes Hernan identified defendant as the man who shot him.[5] The gun used in the shooting was never recovered. At trial, none of the Cocoms identified defendant as the shooter.

*Gang Evidence*

In January 2017, Officer Erin Dougherty was assigned to the LAPD's Southwest Gang Enforcement Detail. Officer Dougherty had three or four interactions with defendant and testified that defendant was a member of the ATC gang, as was Cordero. Officer Dougherty based this conclusion on the clothing defendant wore, the fact that he hung out in an area of Martin Luther King Park (King park) claimed by ATC, and two photographs of defendant taken at King park in January 2017. In one photo defendant wore a backpack depicting signs for ATC

---

[4]     This was the same photo Cordero identified as the dog, Nino.

[5]     Hernan wrote: "The day I was shot I only was able to see one person's face. I can't remember it, but as I stared at the [lineup] pictures, number 4 stood out to me as though I had seen it before." Hernan circled and initialed the photo in position No. 4. Defendant does not dispute it was his photograph that Hernan identified. Emmanuel and Hernan Sr. were shown the same lineups; neither made an identification.

gang and one of its cliques, the Tokers. A second photo showed defendant wearing an Atlanta Braves hat, which Officer Dougherty testified is known to represent the "A" in ATC. On the day the photographs were taken, defendant was hanging out in King park with three known ATC members.

LAPD Officer Ely Huacuja testified as a gang expert. ATC, which has 60 to 70 active members, is one of the street gangs monitored by Officer Huacuja and he participated in defendant's March 3, 2017 arrest. Officer Huacuja testified that the ATC gang's activities generally involve murder, attempted murder, shootings, burglaries, armed car jackings, armed and other robberies, and vandalism. Officer Huacuja opined that defendant was a member of the ATC gang. His opinion was based on his knowledge of ATC's gang activities, personally observing defendant in ATC territory in the company of ATC gang members, and the graffiti/tagging materials found during the search of defendant's bedroom.[6] Presented by the prosecution with a hypothetical premised on facts identical to this case, Officer Huacuja opined that the

---

[6]     The prosecution introduced three predicate crimes involving ATC gang members: (1) *People v. Luis Conde*, in which an admitted member of the gang pled guilty to unlawful possession of a firearm; (2) *People v. Nelson Belton*, in which an admitted member of the gang pled guilty to vandalism and admitted a gang allegation; and (3) *People v. Devonte Flowers*, in which the defendant (whom Officer Huacuja had seen hanging out and associating with ATC gang members), pled guilty to murder and admitted personally using a firearm in connection with that crime.

crimes were committed for the benefit of and in association with ATC, a criminal street gang.

Defendant offered no evidence or witnesses.

## DISCUSSION

Defendant contends that the judgment must be reversed because: (1) the evidence is insufficient to support the jury's conclusion that he acted with deliberation and premeditation; (2) the trial court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter; and (3) there is insufficient evidence to support the jury's finding that he was the shooter.[7]  None of these contentions has merit.

I.    *Ample Evidence Supports the Jury's Conclusion that Defendant Acted with Deliberation and Premeditation*

Defendant contends the evidence at trial was insufficient to support the jury's conclusion that he committed the shooting with premeditation or deliberation.[8]

---

[7]    Defendant also asserts that, if we agree the record contains insufficient evidence his actions were deliberate or premeditated, he is entitled to resentencing.  As set forth below, we disagree with this contention and need not address this contention.

[8]    Most of defendant's claim that the evidentiary record is insufficient to support a finding that he acted with premeditation and deliberation is devoted to his invitation to this Court to reassess the legal standard for what constitutes premeditation or deliberation in the case of attempted murder. That issue, however, has definitively been decided by the California Supreme

A. *Governing Law and the Standard of Review*

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court ""presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citations.]" (*Morales, supra,* 10 Cal.5th at p. 88.) If believed by the jury, the testimony of a single witness is sufficient to uphold a judgment, even if that testimony is uncorroborated, contradicted, or inconsistent or false in other respects. (*People v. Panah* (2005) 35 Cal.4th 395, 489 (*Panah*); Evid. Code, § 411.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181 (*Young*).)

"The crime of attempted murder is not divided into degrees, but the sentence can be enhanced if the attempt to kill was committed with

_____

Court in its recent decision, *People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*).)

10

premeditation and deliberation." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654 (*Gonzalez*).) ""'[P]remeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.'" [Citation.]" (*Morales, supra,* 10 Cal.5th at p. 88.) ""'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.'" [Citations.]" (*Ibid.*) "'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." [Citation.]' [Citation.]" (*Ibid.*)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), the California Supreme Court identified three categories of evidence generally considered in assessing if there is sufficient evidence to sustain a finding that a murder or attempted murder was committed with premeditation and deliberation—planning activity, motive, and the manner of killing. (*Id.* at pp. 26-27; *Gonzalez, supra,* 54 Cal.4th at pp. 663–664 [applying *Anderson* factors in case of attempted murder].) Since its decision in *Anderson*, the Supreme Court has ""'emphasized that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight.'" [Citation.] *Anderson* provides 'a framework to aid in appellate review,' but does not 'define the elements of first degree murder or alter the substantive law . . . in any way.' (*People v. Perez*

11

(1992) 2 Cal.4th 1117, 1125.)" (*Morales, supra,* 10 Cal.5th at p. 89; *Gonzalez, supra,* 54 Cal.4th at p. 664.)  Put simply, the *Anderson* factors are not exclusive, nor need all three be present to find substantial evidence of premeditation and deliberation.  (See *People v. Koontz* (2002) 27 Cal.4th 1041, 1081 (*Koontz*).)

B.  *Analysis*

Defendant argues, in substance, that the evidence merely showed that he is a gang member who was carrying a gun, that he pointed the gun at Hernan for 30 seconds, that he thought about what he was doing before the shooting, and that he then shot Hernan in the abdomen at close range.  According to defendant, such circumstances are insufficient to prove he acted with premeditation and deliberation.  However, defendant's characterization of the evidence cannot be taken at face value.  All three *Anderson* factors are satisfied here.

First, as for defendant's motive, defendant and Cordero were members of ATC.  Cordero admitted during his March 3, 2017 LAPD interview that, just before the shooting, he was walking with defendant and a third man, also a member of ATC, when the third man suddenly stole a van and sped away.  Before the shooting, defendant had a brief verbal exchange with Hernan and Emmanuel when he told them, "If you know what's good for you go home," and "Fuck your family." Shortly before defendant shot the victim, Hernan Sr. grabbed Cordero's sweatshirt, tried to remove his hood, and instructed his sons to take Cordero's photo.  Presented with hypothetical facts identical to this

12

case, Officer Huacuja opined that defendant's crime was committed for the benefit of and in association with the ATC gang. From all this evidence, the jury could reasonably infer that defendant's motive for shooting Hernan was to facilitate a gang-related car theft, both to prevent the victims from taking a photo of Cordero that would assist in a police investigation to identify suspects, and to instill fear in the community by shooting a witness to the gang-related crime.

Second, there is evidence of defendant's planning activity. As we have noted, before the shooting, defendant told Herman and Emmanuel that they should leave if they knew what was good for them, and added, "Fuck your family." Hernan, Emmanuel and their father all testified that defendant pulled out a gun he was carrying on his person to shoot Hernan. From this evidence the jury could infer that one reason defendant carried a loaded gun on January 27, 2017, was that he had planned for the contingency that he might have to kill someone. (See *Young, supra,* 34 Cal.4th at p. 1183 [possession of a loaded gun provides evidence of planning from which "the jury could infer that defendant 'considered the possibility of murder in advance'"]; *People v. Morris* (1988) 46 Cal.3d 1, 23, disapproved on another ground by *In re Sassounian* (1995) 9 Cal.4th 535, 543–546, fns. 5 & 6.)

Finally, the manner in which defendant shot Hernan demonstrates he acted with premeditation and deliberation. From a distance of less than six feet, defendant pointed his gun at Hernan for as long as 30 seconds before shooting him in the abdomen, endangering vital organs. (See, e.g., *Koontz, supra,* 27 Cal.4th at p. 1082 [finding the

13

manner of killing consistent with premeditation where the victim was shot in a "vital area of the body at close range"].) Moreover, defendant shot Hernan even though all three Cocoms had stopped any activity and raised their hands into the air, and Hernan tried to mollify defendant by saying, "it's fine, just go." The record contains sufficient evidence from which the jury could conclude the attempted murder was premeditated and deliberate.

## II. *The Court Was Not Required to Instruct on a Lesser Included Offense*

Defendant argues that the evidence warranted instructions on heat of passion or imperfect defense of another, and the trial court erred by not instructing the jury sua sponte on voluntary manslaughter.[9] We conclude the trial court had no obligation to give such an instruction because there was no substantial evidence defendant committed the lesser included offense of attempted manslaughter as opposed to the greater offense of attempted murder. Moreover, the jury's finding of premeditation demonstrates that, even if such error occurred, it was harmless.

---

[9] To the extent defendant contends the court also erred in failing to instruct the jury on "attempted involuntary manslaughter," he is wrong. Attempted involuntary manslaughter is not a crime. "If there were such a crime, it would necessarily be based on the internally contradictory premise that one can intend to commit an unintentional killing . . . a manifest impossibility." (*People v. Johnson* (1996) 51 Cal.App.4th 1329, 1332.)

14

A.  *Controlling Law*

A trial court has a sua sponte duty to instruct the jury on all lesser included offenses if there is substantial evidence from which a jury can reasonably conclude the defendant committed the lesser, uncharged offense, but not the greater.  (*People v. Whalen* (2013) 56 Cal.4th 1, 68 (*Whalen*), disapproved on another ground in *People v. Romero and Self* (2015) 62 Cal.4th 1, 44, fn. 17.)  The court's duty to instruct on a lesser included offense exists even if defense counsel elects not to request the instruction.  (*People v. Barton* (1995) 12 Cal.4th 186, 195; *People v. Elize* (1999) 71 Cal.App.4th 605, 612–613.)  Conversely, if there is insufficient evidence "the offense committed was less than that charged, the trial court is not required to instruct on the lesser included offense.  [Citation.]  Voluntary manslaughter is a lesser included offense of murder.  [Citation.]"  (*People v. Booker* (2011) 51 Cal.4th 141, 181 (*Booker*).)  The actions of a victim may constitute legally adequate provocation only if they are "'sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.  [Citations.]  "Heat of passion arises when 'at the time of the [attempted] killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.'"'"  (*People v. Manriquez* (2005) 37 Cal.4th 547, 583–584 (*Manriquez*).)

The "substantial evidence" requirement for triggering the duty to instruct on lesser included offenses is not satisfied by any evidence, no matter how weak, but rather by evidence from which a rational jury could conclude the defendant committed the lesser offense, but not the greater. (*Whalen, supra,* 56 Cal.4th at p. 68; *People v. Cruz* (2008) 44 Cal.4th 636, 664.)

Attempted voluntary manslaughter, which lacks the element of malice, is a lesser included offense of attempted murder. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) Malice is "presumptively absent when the defendant . . . kills in the unreasonable, but good faith, belief that deadly force is necessary in self-defense." (*Manriquez, supra,* 37 Cal.4th at p. 583.) Similarly, "one who kills in imperfect defense of others—in the actual but unreasonable belief he must defend another from imminent danger of death or great bodily injury—is guilty only of manslaughter." (*People v. Randle* (2005) 35 Cal.4th 987, 997, overruled on another ground by *People v. Chun* (2009) 45 Cal.4th 1172, 1201.) "Imperfect self-defense is the killing of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury. [Citation.] Such a killing is deemed to be without malice and thus cannot be murder. [Citation.]" (*Booker, supra,* 51 Cal.4th at p. 182.) "On appeal, we review independently whether the trial court erred in failing to instruct on a lesser included offense." (*Id.* at p. 181.)

B. *No Substantial Evidence Warranted an Attempted Voluntary Manslaughter Instruction*

Defendant claims the evidence at trial triggered the court's sua sponte duty to instruct the jury on voluntary manslaughter. However, contrary to defendant's contention, there was no substantial evidence defendant acted in the heat of passion or in defense of Cordero.[10]

The evidence of defendant's encounter with the Cocom family does not support a conclusion that this encounter would have caused an ordinary person to act rashly or without deliberation, and there is no evidence defendant subjectively acted under any heat of passion. Defendant had a brief verbal exchange with Hernan and Emmanuel when he told them, "If you know what's good for you go home," and "Fuck your family." When defendant saw Hernan Sr. trying to pull back Cordero's hoody, defendant pulled out a loaded gun he was carrying and pointed it at Hernan. Defendant calmly reflected for as long as 30 seconds—while all three of the Cocoms had their hands raised in surrender—before shooting Hernan at point blank range in the abdomen.

Defendant mistakenly claims that the purported struggle between his stepbrother Cordero and Hernan Sr. constitutes legally adequate provocation. As explained above, there is no substantial evidence that

---

[10] After the parties rested, the court and counsel had a brief discussion regarding jury instructions during which the trial court stated, "I don't see any lessers. I don't see anything that is unusual." Defense counsel did not request or raise the issue of giving a voluntary manslaughter instruction.

17

Hernan Sr. (or his sons) initiated a fight or was engaged in mutual combat. Rather, the record contains substantial evidence that Hernan Sr. simply attempted to reveal Cordero's face so his sons could take a photograph, because he believed Cordero was involved in the theft of his van. This was not a circumstance that would have caused a reasonable person to respond rashly by shooting Hernan, who happened to step between his father and Cordero. "The focus is on the provocation—the surrounding circumstances—and whether it was sufficient to cause a reasonable person to act rashly. How the [defendant] responded . . . is not relevant to . . . heat of passion." (*People v. Najera* (2006) 138 Cal.App.4th 212, 223.)

Nor does the record contain substantial evidence that defendant harbored an actual but unreasonable belief he needed to defend Cordero from imminent danger of death or great bodily injury. (*Booker, supra*, 51 Cal.4th at p. 182.) There is no evidence any of the Cocoms was armed or behaved in a violent or aggressive manner toward Cordero. Hernan Sr. tried to pull Cordero's hood off, but Cordero conceded the two did not engage in any physical altercation. Indeed, Cordero told the police he "didn't fight" with Hernan Sr., and Hernan Sr. had only "got [his] sweater, . . . then [defendant] just shot him." Given this undisputed evidence, there was no reasonable basis for the jury to conclude that defendant believed Cordero was in imminent danger of great bodily injury or death. (*Booker, supra*, 51 Cal.4th at p. 182.) In other words, the jury could find defendant acted in imperfect, self-defense only if it disbelieved undisputed evidence of how the shooting

18

occurred. Thus, the trial court properly concluded there was no basis to warrant instructing the jury on the lesser included offense of attempted manslaughter.

C. *Error, if Any Occurred, Was Harmless*

Assuming that the trial court erred in failing to instruct on the lesser included offense of voluntary manslaughter (it did not), such an error would be subject to the harmless error analysis of *People v. Watson* (1956) 46 Cal.2d 818. That standard requires that a judgment be affirmed unless it is reasonably probable the appellant would have obtained a more favorable result had the instruction been given. (*Id.* at p. 836; *People v. Breverman* (1998) 19 Cal.4th 142, 164-178.) Because the jury found defendant's actions were willful, deliberate, and premeditated, it is not reasonably probable defendant would have been convicted only of attempted manslaughter had the jury been instructed on that offense. (See *People v. Wang* (2020) 46 Cal.App.5th 1055, 1072 [failure to instruct on voluntary manslaughter was harmless in light of the jury's finding of premeditated first degree murder, because premeditation and deliberation is "manifestly inconsistent" with heat of passion]; *People v. Franklin* (2018) 21 Cal.App.5th 881, 894 [error in attempted voluntary manslaughter instruction was harmless in light of the jury's finding of premeditation and deliberation].)

## III. *The Record Contains Sufficient Evidence to Support the Jury's Finding that Defendant Shot Hernan*

Defendant contends there was insufficient evidence to establish that it was he who shot Hernan, because the witness identifications were "uncertain" and "problematic." He is wrong.

To reiterate, on appeal, we must examine the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*Morales, supra*, 10 Cal.5th at p. 88.) One witness's testimony, if believed by the jury, is sufficient to uphold the judgment, even if that testimony is contradicted, or inconsistent or false in other respects. (See *Panah, supra*, 35 Cal.4th at p. 489; Evid. Code, § 411.)

Defendant claims that neither Hernan's identification of defendant in the photo lineup nor the identification Cordero made during his March 3, 2017 police interview were sufficient to prove beyond a reasonable doubt that he was the shooter, because neither man identified him in court. Defendant is incorrect. "Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime. [Citation.] Moreover, a testifying witness's out-of-court identification is probative for that purpose and can, by itself, be sufficient evidence of the defendant's guilt *even if the witness does not confirm it in court.*" (*People v. Boyer* (2006) 38 Cal.4th 412, 480, italics added; *Morales, supra*, 10 Cal.5th at p. 88.)

The out-of-court identifications by Hernan and Cordero constitute sufficient evidence that it was defendant who shot Hernan. In addition, those out-of-court identifications were corroborated by evidence the shooter carried a white Pit Bull puppy, and that a dog matching the same description lived with defendant and Cordero at the time of the shooting. Finally, jurors were instructed on the concepts of reasonable doubt, direct and circumstantial evidence and witness testimony. We presume jurors "understand and follow the court's instructions." (*People v. Pearson* (2013) 56 Cal.4th 393, 414.) The record contains sufficient evidence to support the jury's conclusion that defendant shot Hernan.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY J.


21