Filed 9/15/25  P. v. Murray CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083376 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE397561) |
| CARLA MURRAY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frank L. Birchak, Judge.  Affirmed.

Belinda Escobosa, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, James M. Toohey, and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

Carla Murray appeals from a judgment after a jury found her guilty of assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2)) and other crimes. As to the assault with a firearm count, the jury also found true a sentencing enhancement allegation that Murray personally used a firearm during the commission of the offense (§ 12022.5, subd. (a)). At sentencing, the trial court struck the firearm enhancement and granted probation. The court also imposed a suspended prison sentence that included a four-year upper term on the assault with a firearm conviction.

On appeal, Murray argues the trial court improperly relied on two aggravating factors to impose the suspended upper term for assault with a firearm, namely her personal use of a firearm and that the victim was "particularly vulnerable." We conclude the trial court did not err in relying on Murray's personal use of a firearm in imposing the suspended upper term. As to the particularly-vulnerable-victim factor, we conclude the trial court did not rely on this circumstance as an aggravating factor in imposing the upper term. Instead, as explained below, the court properly relied on this factor in deciding that the presumption in favor of the low term based on childhood trauma had been rebutted. (See § 1170, subd. (b)(6)(A) [creating a presumption in favor of the low term if childhood trauma was a contributing factor in the commission of the offense that may be overcome only if the court finds that the aggravating circumstances outweigh the mitigating circumstances such that the lower term would be contrary to the interests of justice].) Accordingly, we affirm the judgment.

---

1    All further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Offenses*

In December 2019, Murray was a 59-year-old nurse practitioner. She had dated Gene A. for two years from November 2017 until October 2019. They were about the same age. After their relationship ended, they continued to communicate and occasionally have sex.

On December 26 and 27, 2019, Murray sent texts to Gene calling him a "liar" who had "no honor," saying she did not think he was "that person," describing the end of their relationship as "the greatest loss she ever suffered," and telling him, "Goodbye my once darling Gene."

Around 10:00 p.m. on December 28, 2019, Gene returned home with his ex-wife after going out to dinner together. He locked the doors before they retired to bed. Murray arrived uninvited about 45 minutes later and used a copy of Gene's key to enter his home without permission. Surveillance videos from Gene's house showed Murray making unsuccessful attempts to open the front and back doors before gaining entry through the back door. Murray then entered Gene's bedroom and discovered him and his ex-wife having sex.

Murray began striking Gene with her fists as he lay in bed. As Gene attempted to stand, Murray stomped on his legs and feet, jabbed at his face with her keys, and violently grabbed his penis, dug her nails into it, and pulled hard on it. When Murray began attacking Gene's ex-wife, Gene restrained Murray, allowing his ex-wife to flee outside. Gene was able to put on pants and exit his home ensuring his ex-wife safely left the property.

Gene walked back inside less than a minute later to retrieve his cellphone and to ask Murray to leave. Upon turning the corner into the bedroom hallway, Gene saw Murray point a firearm directly at his head from point-blank range. Gene recognized the firearm as the one he kept next to his bed for self-protection. Gene attempted to distract Murray by talking her

down and was able to back out of the hallway and escape out the back door. Gene heard the gun discharge as he ran outside, causing him to hide behind a jacuzzi on the north end of the property and to call the police. After Murray left, Gene re-entered the house and discovered significant damage to his property, including a shattered window. He found the gun in his closet. Law enforcement recovered a bullet from a wood beam on Gene's porch.

Gene sustained "stab wounds" to his face, bruises to his knees and leg, and injuries to his penis that caused pain for about three weeks.

B. *The Charges and Trial*

The People charged Murray with assault with a deadly weapon (§ 245, subd. (a)(1); count one), assault with a firearm (§ 245, subd. (a)(2); count two), inflicting injury on a significant other resulting in a traumatic condition (§ 273.5, subd. (a); count three), vandalism (§ 594, subds. (a) & (b)(1); count four), and battery (§ 242; count five). The People also alleged a personal use of a firearm enhancement (§ 12022.5, subd. (a)) as to counts one and two. The trial court dismissed count one because the only deadly weapon used was a firearm, which was the crime charged in count two.

In a jury trial in 2023, the jury returned guilty verdicts as to counts two through five and found the personal use of a firearm enhancement as to count two to be true.

C. *Sentencing Proceedings*

In a sentencing memorandum and accompanying declaration, Murray argued that various mitigating factors existed, including that she suffered childhood psychological trauma from her alcoholic parents and from sexual abuse. Murray also invited the trial court to use its discretion to dismiss the

4

personal use of a firearm enhancement under section 1385 because of her childhood trauma.

At the sentencing hearing, the court initially indicated it did not intend to strike the firearm enhancement and gave a tentative ruling of three years probation with a suspended sentence of six years eight months. The court then heard extensive testimony from Murray and her ex-husband regarding her childhood trauma and the circumstances of the offense.

During arguments, the court asked Murray's counsel whether dismissal of the firearm enhancement would allow the court to consider the fact of Murray's firearm use as an aggravating factor to impose the upper term for the assault with a firearm. The court noted that the use of a firearm "could be viewed as inherent in the offense" of assault with a firearm, but cited section 12022.5, subdivision (d), which allows imposition of a firearm enhancement for a violation of section 245 even if firearm use is an element of the offense. In response to the court's question, Murray's counsel acknowledged that "it's in my client's best interest to say yes" but initially stated that "you can't use the finding if you dismissed it in another way to enhance the sentence." Defense counsel then suggested that the firearm use could actually be considered "just a part of the event, but not as an enhancement" in "determining low, mid, upper on a [section] 245."

The court dismissed the firearm enhancement under section 1385 after finding Murray suffered childhood trauma that was connected to the offense. Although the court found Murray presumptively ineligible for probation because of her use of the firearm, it concluded the presumption was rebutted by her age and lack of criminal history. After weighing aggravating and mitigating factors, the court decided to grant probation. The court found

5

"compelling" that Murray had "dedicated her life to helping people" as a nurse.

The court also imposed a suspended prison sentence. With respect to count two, the court imposed an upper term sentence of four years. The court further imposed a middle term sentence of one year as to count three to be served consecutively. The court specified that court four was to run consecutively and that the sentence on count five was to run concurrently. While the court did not expressly indicate a term for either count four or count five, a minute order states, and the parties both state in their briefs, that the court imposed a total term of five years eight months, including a consecutive term of eight months on count four and a concurrent term of 180 days on count five. The court suspended the execution of the sentence for a three-year probationary term, on the condition that Murray serve one year in custody.

## DISCUSSION

Murray claims the trial court erred in relying on two aggravating factors — her personal use of a firearm and that the victim was particularly vulnerable — to impose the upper term suspended sentence as to count two, assault with a firearm (§ 245. subd. (a)(2)). We are not persuaded that the trial court erred.

### A. *Standard of Review*

"A trial court's judgment is presumed to be correct and to be based on legitimate sentencing objectives. Isolated or ambiguous remarks by the trial court do not overcome that presumption. The party attacking the judgment must clearly and affirmatively demonstrate that the trial court relied on

improper considerations." (*People v. Superior Ct. (Du)* (1992) 5 Cal.App.4th 822, 835 (*Du*).)

In general, sentencing decisions are reviewed for abuse of discretion. (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.) An abuse of discretion is found where the court " 'relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decisions.' " (*Ibid.*) "A court acting while unaware of the full scope of its discretion is deemed to have abused it." (*People v. McDavid* (2024) 15 Cal.5th 1015, 1023.)

To the extent Murray's claim rests on our interpretation of the applicable statutory scheme and the California Rules of Court, we review the issue de novo. (See, e.g., *Webster v. App. Div. of Superior Court* (2020) 51 Cal.App.5th 676, 679–680.)

B.    *Personal Use of a Firearm as an Aggravating Factor*

Murray claims the trial court abused its discretion in imposing the upper term on the assault with a firearm count based on her personal use of a firearm for several reasons.

First, Murray maintains that the trial court was required to impose the *low* term on this count because it dismissed the firearm enhancement attached to this count pursuant to section 1385, subdivision (c) in part on the ground that the offense was connected to her childhood trauma. (§ 1170, subd. (b)(6)(A).) We disagree. Case law establishes that there are significant differences between a trial court's decision to dismiss an enhancement based on childhood trauma pursuant to section 1385, subdivision (c) and the court's application of the presumption in favor of the low term for childhood trauma under section 1170, subdivision (b)(6)(A). (See *People v. Knowles* (2024) 105 Cal.App.5th 757, 767 [outlining the "meaningful differences" between the two statutes].) Murray, in turn, cites no authority for the proposition that the striking of an enhancement based on childhood trauma also necessitates the

7

imposition of the lower term. Further, in this case, the trial court found the presumption in favor of the low term rebutted by "the factors of late at night, . . . entering without permission, . . . Mr. [A.] being naked and a vulnerable victim." Accordingly, we conclude the trial court did not abuse its discretion in declining to impose the low term on the assault with a firearm count.

Murray further argues that the court committed a "dual use[]" violation by imposing an upper term sentence on the assault with a firearm count because "use of a firearm was an essential element" of the offense.[2] She relies on California Rules of Court, rule 4.420(h)[3] which provides, "A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term." We are not convinced.

Section 245, subdivision (a)(2) provides that anyone "who commits an assault upon the person of another with a firearm" is punishable by imprisonment in the state prison for two, three or four years. "By definition,

---

[2]    In presenting this argument, Murray also briefly contends that the court erred in "us[ing] the same facts underlying the dismissed firearm enhancement to justify imposing a concurrent [*sic*] sentence on the vandalism conviction." To the extent Murray intends to claim that the court committed a dual use violation in imposing a *consecutive* sentence on the vandalism count based on her use of a firearm, we reject this argument.

We assume for purposes of this decision that Murray has not forfeited this contention by failing to raise it as a separate argument in her brief. (Rule 8.204(a)(1)(B) [requiring each brief to "[s]tate each point under a separate heading or subheading summarizing the point"], rule 8.360(a) [briefs in criminal appeals must comply as nearly as possible with rule[] . . . 8.204].) On the merits, the court expressly based the consecutive sentence on count four in part on Murray's "discharge" of the firearm, a fact distinct from her mere *use* of a firearm. Thus, the trial court did not commit a dual use violation in imposing a consecutive sentence on the vandalism count.

[3]    All further references to rules are to the California Rules of Court.

such an act necessarily involves 'use of a firearm.' " (*People v. Hill* (1989) 207 Cal.App.3d 1574, 1577, fn. 8.)

Section 12022.5, subdivision (a) provides for a sentence enhancement for a person who "*personally* uses a firearm" in the commission of any felony, punishable by an additional consecutive term of three, four, or 10 years, "unless *use* of a firearm is an element of that offense." (Italics added.) The latter limitation is qualified by subdivision (d) of section 12022.5 in relevant part as follows: "Notwithstanding the limitation in subdivision (a) relating to being an element of the offense, the additional term provided by this section shall be imposed for any violation of Section 245 if a firearm is used . . . ." Under subdivision (d), therefore, a section 12022.5 firearm enhancement may be imposed for assault with a firearm in violation of section 245, subdivision (a)(2), even though firearm use is an element of the offense. (See *People v. Johnson* (1996) 51 Cal.App.4th 1329, 1332–1334; *People v. Martinez* (1987) 194 Cal.App.3d 15, 18–19.)

As the People correctly argue, there was no dual use violation in this case because assault with a firearm does not necessarily require *personal* use of a firearm. "A sentencing factor is only an element of the offense . . . if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor." (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1262.) Assault with a firearm can be accomplished without personal use of a firearm when the defendant is convicted as an aider and abettor or some other theory of vicarious liability. (See *People v. Ahmed* (2011) 53 Cal.4th 156, 161, fn. 2; *People v. Equarte* (1986) 42 Cal.3d 456, 466.)

Indeed, the text of section 12022.5, subdivision (a) supports the conclusion that the Legislature drew a distinction between *personal* use of a firearm and *use* of a firearm, by specifying that "any person who *personally*

9

uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless *use* of a firearm is an element of that offense." (Italics added.) Because section 12022.5 prohibits the imposition of the subdivision (a) *personal* use enhancement where a similar, but distinct, element of the underlying offense exists (i.e. *use* of a firearm) unless the underlying offense is one of those specified in subdivision (d) (as it is here), the plain language of the statute recognizes the distinction between the two facts. In short, *personal* use is not an element of section 245, subdivision (a), and thus the trial court did not commit a dual use violation in relying on the jury's finding of personal use to impose an upper term sentence on count two.

Finally, to the extent Murray's brief may be read to argue that the trial court erred in imposing the upper term on count two based on her personal use of a firearm because the court dismissed the firearm enhancement on that court, we reject that contention.

Section 1170, subdivision (b)(5) provides in part, "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." If, however, the court strikes the punishment for an enhancement,[4] rule 4.420(g) allows it to treat the underlying fact found true by the jury as an aggravating factor for imposing the upper term. This rule provides: "To comply with section 1170(b)(5), a fact charged and found as an enhancement may be used as a reason for imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so. The use of a fact of an enhancement to impose the upper term of imprisonment is an adequate

---

[4] A court may strike or dismiss a firearm enhancement in the interest of justice under section 1385 at the time of sentencing. (§ 12022.5, subd. (c).)

10

reason for striking the additional term of imprisonment, regardless of the effect on the total term." Rule 4.420's Advisory Committee comment states that "rule [4.420(g)] makes it clear that a fact charged as an enhancement may, in the alternative, be used as a factor in aggravation."

By its terms, rule 4.420(g) authorizes a court to strike the punishment for a firearm enhancement and instead treat the defendant's firearm use as an aggravating factor for imposing the upper term.[5] Here, the trial court did not impose a "sentence" based on the personal use firearm enhancement (§ 1170, subd. (b)(5)), and thus it did not violate that statute by, consistent with rule 4.420(g), imposing an upper term on count two based on the jury's finding of Murray's personal use of a firearm.

Accordingly, we conclude that the trial court did not abuse its discretion in imposing the upper term on the assault with a firearm count based on her personal use of a firearm.

C. *Victim's Vulnerability as an Aggravating Factor*

Murray also argues the trial court violated her Sixth Amendment right to jury trial by relying on an aggravating factor that Gene was "particularly vulnerable," since this factor was not charged or found true by the jury or admitted by Murray (Rule 4.421(a)(3)).

---

[5] Murray does not dispute that, in striking the personal use firearm enhancement, the trial court necessarily struck the punishment associated with such enhancement. And, as Murray's counsel acknowledged below, the trial court's striking of firearm enhancement (and thereby its punishment) and its use of the jury's finding of personal use underlying that enhancement to impose an upper term was in her best interests because it yielded a shorter total sentence on count two than she would have received if the court had imposed the three-year mid-term on the underlying offense and even the three-year low term on the firearm enhancement accompanying this count.

11

The People contend that Murray forfeited her right to assert this claim because she failed to object during sentencing. On the merits, the People in their briefing initially conceded the trial court erred by relying on this factor. However, the People withdrew this concession at oral argument.[6]

For the reasons described below, we address the merits of Murray's claim and conclude that the trial court did not rely on the particularly-vulnerable-victim factor in imposing the upper term.

### 1. Forfeiture

Forfeiture is typically recognized on "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Arguably, by failing to object on this ground in the trial court, Murray forfeited her claim that the trial court's articulation of the basis for its imposition of the upper term was erroneous to the extent the court relied on the status of the victim as being particularly vulnerable. (See *People v. Gonzalez* (2003) 31 Cal.4th 745, 752 ["It is only if the trial court fails to give the parties any meaningful opportunity to object that the *Scott* rule becomes inapplicable"].)

On the other hand, a defendant's failure to object at sentencing does not forfeit a claim that the trial court's reliance on an unproven aggravating factor violated the defendant's constitutional right to jury trial. (*People v. French* (2008) 43 Cal.4th 36, 46–47 [defendant did not forfeit Sixth Amendment claim by failing to object or request jury trial on aggravating circumstances because defendant must enter an "express waiver" of the constitutional right to a jury trial].) And "[a] Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an

---

6   We deny Murray's request made at oral argument for supplemental briefing on the issue.

upper term sentence, even if some other aggravating facts relied on have been properly established." (*People v. Lynch* (2024) 16 Cal.5th 730, 768.)

In any event, it is within our authority to reach a "question that has not been preserved for review by a party." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) We may choose to reach the merits of the issue, for example, to " 'forestall' a cognizable ineffective assistance of counsel claim." (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 326 (*Gonzalez*).) Murray has argued that if we deem the issue forfeited, then her counsel's failure to object at sentencing constituted ineffective assistance of counsel.

Under these circumstances, where there are competing arguments as to forfeiture and Murray raises an alternative ineffective assistance of counsel claim, we will exercise our discretion to reach the merits of Murray's claim notwithstanding any forfeiture and need not address her alternative claim for ineffective assistance of counsel. (See *Gonzalez, supra*, 107 Cal.App.5th at pp. 326–327 [exercising discretion to reach merits of similar Sixth Amendment claim despite lack of objection].)

2. Merits

Section 1170, subdivision (b)(2) provides in part: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Rule 4.421(a)(3) specifies as a circumstance in aggravation that "[t]he victim was particularly vulnerable."

The record does not support Murray's contention that the trial court relied on Gene being "particularly vulnerable" as a factor in aggravation supporting the imposition of the upper term. (Rule 4.421(a)(3).)

As noted above, at the sentencing hearing, the court dismissed the firearm enhancement (§ 12022.5), in part, due to the court's finding that Murray's childhood trauma was connected to the offense.

After explaining its rationale for granting probation, the court stated that it was going to impose a suspended prison term. With respect to count two, the court stated: "I will say part of the reason I dismissed the [section] 12022.5 [firearm enhancement], I do believe I can impose the high term and that I can use that as an aggravating factor that she personally used a gun. Because somebody can commit an assault with a firearm without personal use under an aiding and abetting theory, and the Legislature has demonstrated an intent that they want that personal use to be an aggravating factor by [section] 12022.5 [subdivision] (d)." The court added, "*I do believe, once you add that in, it is appropriate to impose the high term of four years on count two.*" (Italics added.) Thus, the court clearly relied on Murray's firearm use to impose the upper term for count two.

Then, *after* giving its reasons for imposing the upper term, the court addressed the impact of its prior finding that Murray's childhood trauma was connected to the offense, stating: "I am weighing the presumption of the low term, because under . . . [section] 1170 [subdivision] (b)(6)(A), there is a presumption, and I've already found that this is childhood trauma. So there is a presumption that it would be the low term. [¶] However, given the . . . factors of late at night, given the factors of entering without permission, given the factors of Mr. [A.] being naked and a vulnerable victim, and the

14

personal use of the firearm, I find that rebutted, and so I am imposing four years on count two."

Thus, the trial court referred to Gene's degree of vulnerability in connection with its conclusion that the presumption in favor of the low term under section 1170, subdivision (b)(6)(A) had been rebutted.[7]  However, reasonably interpreted, the court's remarks do not support the conclusion that the court relied on the victim's vulnerability as an additional reason for imposing the upper term.  This reading of the transcript is bolstered by the fact that the court never referred to Gene's vulnerability as a "circumstance in aggravation."  (Rule 4.421.)  In addition, the People did not present any argument at the sentencing hearing that Gene's vulnerability could serve as a circumstance in aggravation.  Accordingly, we conclude that Murray has failed to carry her burden on demonstrating error.  (See *Du, supra*, 5 Cal.App.4th at p. 835 ["Isolated or ambiguous remarks by the trial court do not overcome that presumption"].)

---

[7]     In *People v. Hilburn* (2023) 93 Cal.App.5th 189, 205, this court explained that "under section 1170, subdivision (b)(6), the sentencing court is tasked with assessing mitigating and aggravating factors to impose the middle term only if it first determines that the defendant qualifies for treatment under the provision—because he or she has either experienced certain trauma, is a youthful offender, or is the victim of intimate partner violence, and those circumstances contributed to the offense."  The *Hilburn* court further concluded that "the Sixth Amendment does not constrain this statutory, post-verdict factfinding by the sentencing court."  (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.