Filed 5/28/15  In re Brian P. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re BRIAN P., a Person Coming Under the Juvenile Court Law. | B255259 (Los Angeles County Super. Ct. No. KJ38005) |
| THE PEOPLE, Plaintiff and Respondent, v. BRIAN P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Geanene Yriarte, Judge.  Affirmed.

Gerald Peters, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————————

When confronted by store loss prevention personnel after having stolen store merchandise, defendant Brian P. brandished but did not discharge a canister labeled "pepper spray." The trial court sustained allegations that defendant committed robbery and burglary, used tear gas in commission of the offenses, and personally used a dangerous weapon, namely tear gas. On appeal, defendant contends that brandishing a tear gas canister does not without more constitute "use" of tear gas, and no evidence supported the finding that defendant used a dangerous weapon. We disagree with both contentions. Brandishing a weapon constitutes "use" whether or not the weapon is discharged. And whether the pepper spray in defendant's canister, if any, was actually dangerous is irrelevant for purposes of the enhancement statute, as the weapon was designed to be dangerous and appeared to be capable of carrying out its design, which suffices.

Accordingly, we affirm the judgment.

## BACKGROUND

On February 20, 2013, defendant and a companion took seven portable Bluetooth speakers from a Wal-Mart without paying for them. When they were confronted in the parking lot by Kyle McDaniel, a loss prevention officer employed by the store, defendant produced a canister labeled "pepper spray" and said he would spray McDaniel if he did not get back. After defendant was subdued, he admitted he threatened McDaniel with the pepper spray to prevent him from finding the speakers and said he carried the spray for protection.

At trial, the only evidence concerning the contents of the pepper spray canister was a photograph of the canister bearing a label that said, "18% Pepper Spray" and "Warning: Strong Irritant."

After a contested hearing, the trial court found defendant violated Penal Code sections 211 (robbery), 459 (burglary), and 22810, subdivision (g)(1) (use of tear gas), and found true the allegation that defendant personally used a dangerous weapon within the meaning of Penal Code section 12022, subdivision (b)(1). The trial court declared

2

defendant a ward of the court, placed him on home probation, and terminated wardship as of the same date.

He timely appealed.

## DISCUSSION

A.      *"Use" of Tear Gas*

Defendant contends brandishing a pepper spray canister without discharging any spray does not constitute "use" of the weapon.  We disagree.

"[A]ny person who uses tear gas or any tear gas weapon except in self-defense is guilty of a public offense."  (Pen. Code, § 22810, subd. (g)(1).)  A tear gas weapon is "[a]ny shell, cartridge, or bomb capable of being discharged or exploded, when the discharge or explosion will cause or permit the release or emission of tear gas."  (Pen. Code, § 17250, subd. (a).)  Tear gas is "any liquid, gaseous or solid substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispersed in the air."  (Pen. Code, § 17240, subd. (a).)

"Threatening another with any weapon, including a tear gas weapon," constitutes "use" of the weapon.  (*People v. Hamilton* (1998) 61 Cal.App.4th 149, 154 [defendant pointed an unloaded tear gas gun at the victim and clicked the trigger]; *People v. Wims* (1995) 10 Cal.4th 293, 302 ["use" includes intentionally displaying a weapon in a menacing manner].)  The weapon need not be discharged or even be capable of discharge, so long as there is evidence it was designed to discharge tear gas and gave the appearance of the capability to do so.  (See *People v. Nelums* (1982) 31 Cal.3d 355, 359-360 [defendant used an inoperable firearm].)

Here, defendant brandished a pepper spray canister and told McDaniel he would use it.  That constituted use of a tear gas weapon for purposes of Penal Code section 22810.

B.      *Use of a "Dangerous" Weapon*

"A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be" subject to a sentence enhancement.  (Pen. Code, § 12022, subd. (b)(1).)  Defendant contends insufficient evidence supported the finding

3

that he used a deadly or dangerous weapon because there was no evidence his pepper spray canister was loaded, no evidence that any spray it may have contained was of sufficient strength to be dangerous, and no evidence that pepper spray is itself dangerous.

"'In order to find "true" a section 12022(b) allegation, a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner . . . an instrument capable of inflicting great bodily injury or death. . . .' . . . In determining whether an object which is not inherently deadly or dangerous has been used as a dangerous or deadly weapon, 'the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.'" (*People v. Blake* (2004) 117 Cal.App.4th 543, 555, fns. omitted.)

"'[A] distinction should be made between two classes of "dangerous or deadly weapons." There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. The instrumentalities falling in the first class, such as guns, dirks and blackjacks, which are weapons in the strict sense of the word and are "dangerous or deadly" to others in the ordinary use for which they are designed, may be said as a matter of law to be "dangerous or deadly weapons." This is true as the ordinary use for which they are designed establishes their character as such. The instrumentalities falling into the second class, such as ordinary razors, pocket-knives, hatpins, canes, hammers, hatchets and other sharp or heavy objects, which are not weapons in the strict sense of the word and are not "dangerous or deadly" to others in the ordinary use for which they are designed, may not be said as a matter of law to be "dangerous or deadly weapons." When it appears, however, that an instrumentality other than one falling within the first class is capable of being used in a "dangerous or deadly" manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a "dangerous or deadly weapon" may be thus established, at least for the purposes of that occasion.'" (*People v. Graham* (1969) 71 Cal.2d 303, 327-328, disapproved on other grounds in *People v. Ray* (1975) 14 Cal.3d 20, 32.)

Pepper spray is a dangerous weapon as a matter of law, as the ordinary use for which it is designed establishes its character as such. (See Pen. Code, § 17250, subd. (a) [tear gas "weapon" is any cartridge capable of being discharged and releasing tear gas]; see, e.g., *United States v. Neill* (9th Cir. 1999) 166 F.3d 943, 949-950.) Although the effects of pepper spray are normally temporary, there is no question that it may disable by causing difficulty breathing, burning eyes, nausea, and temporary incapacitation. (*People v. Blake* (2004) 117 Cal.App.4th 543, 558.) Even if pepper spray were not inherently dangerous, it may be fairly inferred from the evidence here that defendant intended to use his canister as a dangerous weapon, in that he brandished it at McDaniel to dissuade him from carrying out his duty, a goal that could have been accomplished only if the perceived danger was great enough to overwhelm the duty.

It is true the only evidence of the degree of danger posed by defendant's pepper spray canister was that it appeared to be such a canister, it was labeled "pepper spray," and the label stated the spray was "18% strength" and constituted a "strong irritant." This evidence does not establish the canister was loaded or that any pepper spray it contained was of sufficient strength to injure McDaniel. But the canister was designed to injure and reasonably appeared to be capable of doing so, and defendant depended at least on that appearance to dissuade McDaniel from apprehending him. It does not matter whether the spray itself would have been capable of injuring McDaniel had it been discharged. The legislative purpose underlying weapons penalty enhancement statutes is to deter those engaged in felonies from creating a risk of death or injury by having a weapon at the scene of the crime. (*People v. Bland* (1995) 10 Cal.4th 991, 1001.) The risk arises not only from potential use of the weapon to protect the defendant or ward off police, but also from potential police reaction to the weapon itself. The deterrence objective is best fulfilled by imposing an enhanced penalty whether or not the weapon is functional, so long as it was designed to function and gave the reasonable appearance of being able to do so. (*People v. Nelums*, *supra*, 31 Cal.3d at pp. 359-360.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

JOHNSON, J.

6