Filed 5/24/23  P. v. Gregg CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060803 |
| v. | (Super. Ct. No. 21CF0388) |
| JONATHAN LEE GREGG, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge.  Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swensen and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Jonathan Lee Gregg appeals from the judgment entered following his conviction after a jury trial on charges of attempted murder and assault of a minor under the age of 18 with intent to commit a sexual offense. Gregg does not challenge the jury's verdict. Instead, he argues the judgment must be reversed and the case remanded to the trial court for resentencing in light of an amendment to Penal Code section 1170 requiring that any aggravating factors relied upon by the court to support an upper determinate term be either admitted by the defendant or found true beyond a reasonable doubt by the jury. Gregg also argues the court abused its discretion by refusing to strike two passages from the probation officer's report.

The Attorney General concedes the sentencing error, but argues it was harmless in this case. We agree. Moreover, we find no error in the court's refusal to strike the challenged portions of the probation report. We consequently affirm the judgment.

**FACTS**

The evidence at trial established Gregg met a depressed and suicidal minor online and, at her request, agreed to kill her in exchange for $200 and her cell phone. When the minor attempted to back out and told Gregg she needed time to get her affairs in order, he told her "[n]o, you need to do it now, while you still have the resolve."

Gregg and the minor met the following morning. She told him she was 16 and gave him $200. After first considering whether he could assist the minor in jumping off a bridge, Gregg drove her to a secluded space at a park and she gave him her cell phone. He told her "once you're ready, just turn around."

When the minor did turn around, Gregg began to choke her and hit her head against a brick wall. Although the minor, who was groggy from ingesting pills and alcohol, had not consented to any sexual contact, Gregg also groped her breast, removed her clothing, rubbed his penis against her vagina and attempted to penetrate her. Despite

2

her impairment, the minor was able to get away; Gregg left her lying naked on the ground.  Before leaving, he took her clothing and cell phone.

In September 2021, Gregg was convicted of attempted murder (Pen. Code,[1] §§ 664, subd. (a), 187, subd. (a)) and assault of a minor under the age of 18 with intent to commit a sexual offense (§ 220, subd. (a)(2)).  The jury also found true the allegation that the attempted murder was done willfully, deliberately, and with premeditation.

The probation officer's report listed these circumstances in aggravation: Gregg's crime involved great violence; a threat of great bodily harm and callousness; the victim was particularly vulnerable; planning; and Gregg violated a position of trust. Circumstances in mitigation were the victim sought assistance to end her life and Gregg had no criminal record.

The court sentenced Gregg to seven years to life on the attempted murder charge, plus a consecutive upper determinate term of nine years on the assault charge.  In explaining its decision to impose the upper term, the court told Gregg, "I am not sure I have the appropriate words to capture how horrific your conduct was in this case.  It's shocking, inhumane the things you did.  [¶]  If I could have sentenced you to more time, I would sentence you to every minute of time available.  There is no purpose for you to walk the streets again.  Nothing.  Despite your childhood, despite what you have done, it has to be this way right now because you being on the streets is not safe for this community.  This community can't have somebody like you out of prison ever again."

The court added, "To prey on a 16-year-old vulnerable child like that, to lure her to her own suicide, to take her up on the idea of killing her, to bash her head against the concrete, to do the one thing she asked not to have happen the night before on those text exchanges which was a sexual assault, and, of course, you topped it off by leaving her for dead."

---

[1]     All further statutory references are to this code unless otherwise indicated.

The court ended with this: "And the cherry on top, truly the icing on the cake is your utter lack of remorse all the way through to the end. Our last contact with each other will be you demonstrating that you have no remorse for [the victim], no remorse for what you did, referring to the jury's verdict as a wrongful conviction in the probation report. Needless to say, I will be giving you the maximum possible punishment."

## DISCUSSION

1. *Resentencing*

At the time of Gregg's sentencing, section 1170 permitted the court to select any of three terms—lower, middle, or upper—as defendant's determinate sentence. However, section 1170 was amended effective January 1, 2022, limiting the court's discretion to impose an upper term. As amended, imposition of the upper term is no longer permitted unless there are aggravating circumstances and "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Gregg argues that pursuant to *In re Estrada* (1965) 63 Cal.2d 740, the amended version of section 1170 is applicable to this case because the judgment is not final. He consequently requests we reverse the judgment and remand the case for resentencing.

The Attorney General agrees the recent amendments to section 1170 apply retroactively to this case, but he disagrees that reversal is required. Instead, he relies on cases holding that the error in imposing an upper term sentence where no aggravating factors were presented to the jury is subject to the harmless error analysis. (See *People v. Zabelle* (2022) 80 Cal.App.5th 1098 (*Zabelle*), *People v. Dunn* (2022) 81 Cal.App.5th

4

394 (*Dunn*), *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*) and *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*).)

These cases follow the reasoning of *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) in which the United States Supreme Court concluded that where the defendant's upper term sentence was authorized by California law, but the law itself violated the United States Constitution because it did not require a jury trial on facts increasing punishment beyond the prescribed statutory maximum sentence, the error was subject to a harmless error analysis.

Gregg disagrees; he argues in *Cunningham* the sentence was authorized by statute, whereas the sentence in this case is not authorized by statute. He then asserts, without further analysis, that "'An unauthorized sentence is just that. It is not subject to a harmless error analysis.'" (*People v. Soto* (2016) 245 Cal.App.4th 1219, 1235, quoting *In re Birdwell* (1996) 50 Cal.App.4th 926, 930.) We are not persuaded. In this case and *Cunningham*, the sentence is authorized, but only if the required findings are made. The problem in both cases was that the law appeared to allow the findings to be made by the court, rather than by the jury at the time of sentencing. We consequently turn to the harmless error analysis.

While the court in *Flores, supra*, 75 Cal.App.5th at p. 500, held that the error in this context is harmless "'if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,'" the court in *Lopez* set a higher standard. That court said the issue was whether it could "conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury." (*Lopez, supra*, 78 Cal.App.5th at p. 466.)

5

According to *Lopez*, if the appellate court could make that finding, then the sentencing error was harmless. If it could not, the court must consider a second question: whether "the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Lopez, supra*, 78 Cal.App.5th at pp. 467-468, fn. 11.)

In *Dunn* and *Zabelle*, the courts applied a variation on the *Lopez* two-part test, with the former holding that the proper standard involved a two-step process in which "[t]he reviewing court [first] determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt [fn. omitted] and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps." (*Dunn, supra*, 81 Cal.App.5th at pp. 409-410.)

In *Zabelle*, the court concluded, "We must first, for each aggravating fact, consider whether it is reasonably probable that the jury would have found the fact not true. We must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Zabelle, supra*, 80 Cal.App.5th at p. 1112.)

The Attorney General argues that under whichever standard might be applied, this judgment should be affirmed because the aggravating facts relied upon by

6

the court, i.e., Gregg's callousness, planning and sophistication, his violation of the victim's trust, the level of violence involved, the victim's vulnerability, and the serious danger to society Gregg presents would have been found true beyond a reasonable doubt by a jury. Beyond a reasonable doubt, we agree.

Gregg argues that some of the aggravating factors are disputable. He suggests that "whether [the victim's] mental health made her a vulnerable victim is a factual question, not a question of law." While Gregg's general premise may be true, in our view no minor who is feeling desperate enough to ask a stranger to help her commit suicide, and then agrees to go with that stranger to a secluded location to accomplish that goal, would ever be considered anything other than vulnerable. The victim's vulnerability gave Gregg an opportunity and he jumped at it.

Gregg asserts that "while there were indications of planning for the agreed upon murder, there was no evidence that [he] planned the subsequent sexual assault in Count 2 that resulted in an upper term sentence." We cannot agree. The record demonstrates Gregg was thinking about sex even before he arrived with the victim at the location where he committed his crimes. He told the victim he had not had sex for a while and said he was "horny." That is strong evidence Gregg's plan involved sexual activity, not just murder. Those facts also demonstrate Gregg's violation of the victim's trust. The callousness of Gregg's conduct is also apparent in his vindictive decision to take the victim's clothing and cell phone after she had thwarted his completion of the sexual assault.

Gregg also asserts that even if we find the jury would have found these aggravating factors to be true beyond a reasonable doubt, "it is not at all clear the court would have imposed the upper term, particularly where the statute now urges the court to consider low terms where mental health and childhood trauma played a role in the crime." The trial court's own words rebut this argument.

7

The court explicitly acknowledged Gregg's mitigating factors in pronouncing his upper term sentence: "I have considered your lack of criminal record. There [are] documented mental health issues that you have faced along the way. I think I noted, at the very least, depression and ADHD that you have been specifically diagnosed with. I know your biological father had mental health issues, and perhaps there is other mental health issues that I haven't even mentioned. [¶] Also, it appears to the Court that you did have a difficult childhood and that you had many struggles along the way. It sounds like a traumatic childhood, physically and emotionally. And the fact that you were put up for adoption, I did want to acknowledge that."

But even with those factors in mind, the court quickly added, "I am not sure I have the appropriate words to capture how horrific your conduct was in this case. It's shocking, inhumane the things you did. [¶] If I could have sentenced you to more time, I would sentence you to every minute of time available. There is no purpose for you to walk the streets again. Nothing. Despite your childhood, despite what you have done, it has to be this way . . . . [¶] . . . If my words are to be taken, you should never see the daylight again. Never. That's how bad this conduct was in this case."

In light of those remarks, we have no reasonable doubt the trial court would sentence Gregg to the upper term if given the opportunity to reconsider Gregg's mitigating mental health and childhood trauma factors.

2.     *Motion to Strike Information in Probation Report*

Gregg next argues the trial court abused its discretion by denying his request to strike two pieces of information from his probation report. (See *People v. Municipal Court (Lopez)* (1981) 116 Cal.App.3d 456, 459 [The trial court has the discretion to correct or to strike a probation report in whole or in part]; see also *People v. Hamilton* (1998) 61 Cal.App.4th 149, 156–157.) Gregg claims the inclusion of these two passages will improperly prejudice his efforts to be granted parole in the future.

8

Gregg challenges (1) a passage reflecting evidence in the police report that the victim told the police officer when she contacted Gregg on the morning of the crimes, "she agreed to meet [him] after he claimed to have assisted a 70-year-old person in suicide by drowning," and (2) a statement by the probation officer that Gregg's crimes had "further exacerbated" issues the victim "was dealing with . . . prior to meeting [him]."

### A. The Police Report Evidence

Gregg's counsel made an oral motion at the beginning of trial to exclude from evidence any reference to Gregg's alleged statement that he assisted with a prior suicide. Counsel noted it was "unclear to me whether [Gregg's alleged] statement was made over the phone, in texting, or whether it was made in person. We don't have any written record of it being made." Counsel did not need to explain his legal justification for excluding trial testimony about the statement because the prosecutor promptly agreed the statement should be excluded.

At sentencing, Gregg moved to strike the passage in the probation report referencing the earlier victim's claim, which the probation report explicitly described as being based on the police report rather than on trial evidence. At the sentencing hearing, Gregg's counsel argued "at some point Mr. Gregg will be considered for parole. . . . And one of the things the parole board is going to consider is this probation report. [¶] So I have concerns about things that were either not elicited during the trial or misstate things from the trial or also bring up criminal history for which there were no findings, there was no charges even brought. [¶] . . . [T]hat's the reason I am asking to exclude them from the report."

Gregg's counsel argued the probation report should "present things that the jury heard and made findings about as opposed to just information contained in the police report because police reports contain all kinds of information that may not be admissible, may be incorrect, may be hearsay."

9

The prosecutor disagreed that the passage should be stricken, pointing out the statement in the probation report properly reflected the content of the police report. He claimed the report reflected what Gregg expected the victim would have testified to, or Gregg would not have made the motion to exclude evidence relating to his statement at trial. The prosecutor also recalled Gregg sought to exclude the evidence from trial on the basis it was unduly prejudicial, rather than on the basis it was unreliable.[2] Gregg's counsel did not disagree with that claim.

In denying Gregg's request, the court distinguished between the issue of excluding evidence from trial and deleting a statement from a probation report, noting that one does not require the other. The court also asked Gregg's counsel what obligation the probation officer had to exclude information contained in the police report. Gregg's counsel acknowledged, "I don't know what the obligation of the probation officer is."

Gregg now argues the court abused its discretion in refusing to strike the passage from the probation report because it incorrectly concluded the distinction between admitting evidence at trial and including it in a probation report was dispositive, and then declined to actually consider whether the passage in the probation report was "accurate and reliable." We disagree. We must presume the court properly considered the issue before it, unless the record reflects it explicitly declined to do so. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) This record does not.

In any event, we are not persuaded by Gregg's claim that this passage of the probation report is unreliable. The passage does not purport to state, as a fact, that Gregg participated in an earlier assisted suicide; it never implies that fact was in evidence at trial. To the contrary, it reflects only that the police report states the victim claimed

---

[2] The prosecutor was likely recalling *his own* reasoning for agreeing the evidence should be excluded. As we have noted, Gregg's counsel did not state a legal basis for excluding evidence of Gregg's statement at trial.

10

Gregg told her he had done so. Gregg does not claim the passage either inaccurately describes the police report or that the police report itself should be considered unreliable.[3]

As explained in *People v. Bloom* (1983) 142 Cal.App.3d 310, it is not enough for the defendant to simply assert that a statement in the probation report is inaccurate. Instead, "[i]f the defendant feels the probation report is insufficient or inaccurate, or is based upon unreliable information, he or she may present witnesses to counteract or correct any portion of the report." (*Id.* at p. 320.) Gregg did not do so here.

Finally, Gregg argues the court erred because it exercised its discretion based on an inaccurate understanding of the facts. Specifically, he claims the court "agreed with the prosecutor's incorrect assertion that [Gregg had] sought to exclude the alleged statement [at trial] because 'it's too prejudicial,' rather than 'it didn't happen, it's speculation, it's hearsay.'" According to Gregg, he moved to exclude the evidence at trial "because of a lack of foundation." The contention is unpersuasive.

As we have already noted, Gregg's counsel never stated a legal ground when he moved to exclude evidence at trial regarding Gregg's claimed participation in an earlier assisted suicide. Had counsel articulated "lack of foundation" as the basis, it would not have been meritorious. Even the police report, which admittedly contains several hearsay statements, reflects foundation for them. According to the report, the victim told the police it was Gregg who made that claim to her.

Had the victim testified about Gregg's statement at trial, it would likely have been admissible under an exception to the hearsay rule, as an admission against Gregg's interest (Evid. Code, § 1230), and the victim could then have supplied the details

---

[3]     Although Gregg argued at trial that the probation report should reflect only the evidence admitted at trial, he does not repeat that argument on appeal. The argument implies a requirement that a probation officer must either attend the trial or review the entire evidentiary record before preparing the probation report. We are aware of no such requirement.

about the circumstances of Gregg's claim.  Thus, Gregg's proposed justifications for excluding that testimony would not have carried the day.  The prosecutor's acknowledgment that Gregg's prior statement was excludable under Evidence Code section 352 seems the only appropriate basis for excluding it.  Unlike appellant, we see no error in the court's finding that the evidence would have been excluded from trial on that basis.

### B.    The Probation Officer's Statement

Gregg also contends the court abused its discretion by refusing to strike the probation officer's statement that Gregg's crimes had "further exacerbated" issues the victim "was dealing with . . . prior to meeting [him]."  Gregg argues the statement was speculative because there is no indication the probation officer spoke with either the victim or her mother before preparing the report.

The prosecutor opposed the request to strike that statement, arguing the probation officer could have reasonably based the statement on "the amount of hospitalization that the victim required."  And in denying the request, the court explained it considered the comment to be "editorial," and believed the probation officer "has some leeway to make that type of remark, and it's a fair comment."

We agree with the court.  If the probation officer's comment related to a factually disputable issue, we might have more sympathy for Gregg's point.  That is not our situation.  The victim here was an emotionally unstable teenage girl who asked Gregg to help kill her.  He chose to sexually assault her instead, which she forcibly resisted. Gregg's conduct could only have exacerbated this victim's emotional and psychological issues, and we find no error in the trial court's refusal to strike the probation officer's recitation of that truth.

## DISPOSITION

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.